# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

MICHAEL AMBLE, FLOYD COULSON,
JOHN HICKS, ALONZO HOSKINS,
DAVID JOHNSON, CURTIS LANE
JESSICA MASE, JESSICA MORGAN,
MICHAEL RICE, RICK SAYLES,
ROBERT THOMAS, MATTHEW
WALLS,

on behalf of themselves and all similar
situated persons,

        Plaintiffs,

v.

TOM SPANGLER Sheriff of Knox County,
Tennessee, in his official and individual
capacities; BERNIE LYON, Chief Deputy
of the Knox County Sheriff's
Department, in his official and individual
capacities; and KNOX COUNTY,
TENNESSEE,

        Defendants.

Case No:_____

**CIVIL RIGHTS CLASS ACTION
COMPLAINT FOR DAMAGES AND
INJUNCTIVE AND DECLARATORY
RELIEF**

**JURY TRIAL DEMANDED**

## COMPLAINT- CLASS ACTION

## INTRODUCTION

1.      This is a civil rights class action for damages and injunctive relief, pursuant to the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, arising from the cruel and unconstitutional policies of the Knox County Sheriff's Department (hereinafter "KCSD") in regards to its abolition of all in-person visitation, inadequate exercise opportunities, inflated commissary prices, lack of access to a proper law library, inadequate mental health

treatment, and the lockdown periods at the jails they control, supervise and run. These policies serve no legitimate penological interest and are at odds with the regulations of the Tennessee Corrections Institute Minimum Standards for Local Adult Correctional Facilities and the standards of accreditation required by the American Correctional Association.

2.     The above captioned Plaintiffs are pretrial detainees with the subclass of family and friends impacted by the Defendants' policies and practices and allege as follows, individually and on behalf of all others similarly situated:

## JURISDICTION AND VENUE

3.     This action arises under the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343, and additionally under 28 U.S.C. §§ 2201 and 2202 and 5 U.S.C. § 552.

4.     Venue is proper in the United States District Court for the Eastern District of Tennessee under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events complained of occurred in this District, and because the Defendants reside and/or are employed by Knox County, Tennessee. Venue is also proper in the Knoxville Division of this Court, as a substantial part of the events complained of occurred in Knox County, Tennessee.

5.     Plaintiffs' claims for relief are predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to the Plaintiffs by the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution and the laws of the United States.

6.     This action seeks declaratory and injunctive relief under 42 U.S.C. §§ 1981 and 1983. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343. It has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. This Court

also has jurisdiction under provisions of 28 U.S.C. § 2201 as this action is filed to obtain declaratory relief regarding the constitutionality of the actions and policies of local government.

7.     This Court has jurisdiction over claims seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure, as well as nominal and compensatory damages against all Defendants. Plaintiffs' claim for attorneys' fees and costs is predicated upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

8.     Plaintiffs are informed, believe and allege that the individual Defendants acted, as described herein, with the intent to injure, vex, annoy and harass Plaintiffs, and subject Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, with the intention of causing Plaintiffs' injury and depriving them of their constitutional rights.

9.     As a result, Plaintiffs seek declaratory and injunctive damages against the individual Defendants in their individual capacities and against Knox County, Tennessee.

10.    Additionally, Plaintiffs seek judgment against Defendants under Tenn. Code Ann. § 8-8-302, which states: "Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office." Tenn. Code Ann. § 8-8-302.

## **PARTIES**

11.    Plaintiff MICHAEL AMBLE is a United States citizen. He is an inmate at the Knox County Jail (hereinafter "KCJ") located at 400 Main Street, Knoxville, Tennessee 37902.

12. Plaintiff FLOYD COULSON is a United States citizen. He is an inmate at the Roger D. Wilson Knox County Detention Facility (hereinafter "KCDF") located at 5001 Maloneyville Road, Knoxville, Tennessee 37918.

13. Plaintiff JOHN HICKS is a United States Citizen. He is an inmate at the KCDF located at 5001 Maloneyville Road, Knoxville, Tennessee 37918.

14. Plaintiff ALONZO HOSKINS is a United States Citizen. He is an inmate at the KCJ located at 400 Main Street, Knoxville, Tennessee 37902.

15. Plaintiff DAVID JOHNSON is a United States Citizen. He is an inmate at the KCDF located at 5001 Maloneyville Road, Knoxville, Tennessee 37918.

16. Plaintiff CURTIS LANE is a United States Citizen. He is an inmate at the KCJ located at 400 Main Street, Knoxville, Tennessee 37902.

17. Plaintiff JESSICA MASE is a United States Citizen. She is an inmate at the KCDF located at 5001 Maloneyville Road, Knoxville, Tennessee 37918.

18. Plaintiff JESSICA MORGAN is a United States Citizen. She is an inmate at the KCDF located at 5001 Maloneyville Road, Knoxville, Tennessee 37918.

19. Plaintiff MICHAEL RICE is a United States Citizen. He is an inmate at the KCDF located at 5001 Maloneyville Road, Knoxville, Tennessee 37918.

20. Plaintiff RICK SAYLES is a United States Citizen. He is an inmate at the KCDF located at 5001 Maloneyville Road, Knoxville, Tennessee 37918.

21. Plaintiff ROBERT THOMAS is a United States Citizen. He is an inmate at the KCDF located at 5001 Maloneyville Road, Knoxville, Tennessee 37918.

22. Plaintiff MATTHEW WALLS is a United States Citizen. He is an inmate at the KCDF located at 5001 Maloneyville Road, Knoxville, Tennessee 37918.

23. Defendant TOM SPANGLER is, and has been for all times relevant to this litigation, the Sheriff of Knox County, Tennessee. As the final policymaker for the KCSD, Defendant Sheriff Spangler establishes, maintains and enforces the policies and procedures at the KCJ, the KCDF and the Knox County Work Release Center (hereinafter "KCWRC"). The KCJ, KCDF and KCWRC are hereinafter collectively referred to as the "Knox County Facilities". Defendant Sheriff Spangler is responsible for the Knox County Facilities' operations and the training and supervision of the Knox County Facilities' staff who interpret Knox County Facilities' mental and physical health care access, lockdown, opportunities for exercise, visitation, commissary amounts, and law library and reading material access policies. Defendant Sheriff Spangler is the final policymaker for the Knox County Facilities and for the KCSD. Defendant Sheriff Spangler is sued in his official and individual capacities.

24. On information and belief, Defendant BERNIE LYON is, and has been at all times relevant to this litigation, the Chief Deputy of the KCSD. As a policymaker for the KCSD, Defendant Lyon is responsible for corrections and personnel for Defendant Sheriff Spangler and the KCSD. Defendant Lyon is subject to the supervision, instruction, direction and training of Defendant Sheriff Spangler and Defendant Knox County, Tennessee. Defendant Lyon is sued in his official and individual capacities.

25. Defendant KNOX COUNTY, TENNESSEE is a municipality formed under the laws of the State of Tennessee. The KCSD is a municipal agency or department of the Defendant Knox County, Tennessee, and operates the Knox County Facilities in Knox County, Tennessee. The official Knox County Facilities' policies at issue in this case were the moving force behind the constitutional violations alleged herein. On information and belief, the Knox County Facilities house convicted prisoners, pretrial detainees and federal detainees.

26.     All of Defendants' acts and omissions alleged herein were taken under color of state law and within the scope of their official duties as employees and officers of Defendant Knox County, Tennessee and the KCSD and violated the Plaintiffs' constitutional rights. Defendant Knox County, Tennessee and Defendant Sheriff Spangler established, maintained, and enforced the policies at issue in this action, which Defendant Lyon implemented, and all of these Defendants continue to do so as of the date of the filing of this Complaint.

27.     Plaintiffs seek leave to amend this Complaint to insert further charging allegations when such facts are ascertained.

28.     Defendant Sheriff Spangler and Defendant Lyon are Tennessee residents.

## GENERAL ALLEGATIONS

29.     Plaintiffs MICHAEL AMBLE, FLOYD COULSON, JOHN HICKS, ALONSO HOSKINS, DAVID JOHNSON, CURTIS LANE, JESSICA MASE, JESSICA MORGAN, MICHAEL RICE, RICK SAYLES, ROBERT THOMAS, MATTHEW WALLS, and all other similarly situated persons are herein referred to collectively as "Plaintiffs".

30.     Defendants SHERIFF TOM SPANGLER, CHIEF DEPUTY BERNIE LYON, and KNOX COUNTY, TENNESSEE, are herein referred to collectively as "Defendants".

## STATEMENT OF FACTS

### A.     MICHAEL AMBLE

31.     Plaintiff Mike Amble is an inmate at the KCJ. Plaintiff Amble filed a grievance form complaining of poor sanitary conditions, lack of medical care, no in-person visitation, and exposure to communicable diseases, and he left it with a guard prior to November 1, 2018, but there was never any response.  Plaintiff Amble also filed a grievance as to the commissary price gouging and the overcrowding of the KCJ.

32.     Plaintiff Amble has lost a significant amount of weight since being housed at the KCJ, has access to very little food, and has no access to exercise equipment. He has a friend who wanted to put money on his commissary but could not figure out how to operate the kiosk. His friends and/or family members who wish to visit with him, but who do not have phones or computers with internet access, must go to the KCDF to communicate via the kiosk there.

33.     Plaintiff Amble avers that the kiosk has a "fastcase" service for legal research, but it is extremely difficult to use and there are no tablets available at the KCJ. He has lots of legal issues he needs to research, but he cannot access law library books and the kiosk is virtually useless.

**B.      FLOYD COULSON**

34.     Plaintiff Coulson filed a grievance regarding access to medical care, lack of in-person visitation, lack of recreational time and the inflated cost of commissary. His grievance was denied, and he appealed it. As of the date of the filing of this Complaint, Plaintiff Coulson has received no response as to the status of the appeal of his grievance.

35.     Plaintiff Coulson believes he has a tumor in his throat which causes him to have difficulty swallowing. He is supposed to be on a soft diet, which Defendants refuse to supply. As a consequence, Plaintiff Coulson has lost approximately 50 pounds. When he went to medical about his tumor, he was told, "We can't do anything for you. Wait until you get to prison, and they will help you." KCJ has charged him $200.00 for past medical expenses, and he has no money on his books.

**C.      JOHN HICKS**

36.     Plaintiff Hicks filed a grievance regarding the lack of in-person visitation and the time it took to get medical treatment. He left the grievance form with a Sergeant Hornsby.

Plaintiff Hicks reports that the sergeant said it was not a grievable matter and returned the grievance form to Plaintiff Hicks. Plaintiff Hicks asserts that it is difficult to get to a kiosk, and when you get a kiosk to speak to your attorney, it is done in front of an officer.

### D. ALONZO HOSKINS

37. Plaintiff Hoskins filed a grievance regarding the lack of in-person visitation, inadequate mental health and medical services and the cost of commissary. He filed his grievance months ago but has heard nothing back. He put his grievance in the official grievance box at the KCJ.

38. Defendants charge Plaintiff Hoskins' family $5.00 to put money on his books. He is charged $10.00 for a medical visit and $5.00 more if he gets medication. Defendants charge him for commissary, using the phone, and charge a fee of $0.75 if he takes money out of his commissary and puts it on his phone. Plaintiff Hoskins asserts that the food served is insufficient. Since his incarceration began, Plaintiff Hoskins has lost over 15 pounds.

39. Plaintiff Hoskins' mental health has deteriorated since being incarcerated at the Knox County Facilities. He never took psychiatric medications before, but now he does. The stress of being cut off from his family and the living conditions he is forced to endure at the Knox County Facilities have caused him to lose weight, lose hair, have difficulty sleeping and caused him to suffer from depression and mental health issues so severe that he requires medication.

40. Plaintiff Hoskins asserts that being locked down all the time is the worst of the living condition he endures.

### E. DAVID JOHNSON

41.     Plaintiff Johnson has filed several grievances during his period of incarceration at the Knox County Facilities. When the first grievance was rejected, he filed six individual grievances. Two of those six grievances were denied, and he has appealed both. As of the date of this filing, Plaintiff Johnson has heard nothing as to the status of the other four grievances or the two grievances he appealed.  Plaintiff Johnson filed grievances regarding the banning of in-person visitation, the lack of adequate outdoor exercise, the inflated cost of commissary, the lack of proper access to the law library, the lack of proper medical and mental health treatment and the 23 hours per day lockdown.

42.     Due to overcrowding, Plaintiff Johnson is forced to sleep on the floor with a mat. He is the third person in a two person cell.  Plaintiff Johnson asserts that due to insufficient staff for supervision, inmates are kept inside for days at a time with no access to adequate exercise or time outdoors.

**F.     CURTIS LANE**

43.     Plaintiff Lane filed a grievance in the grievance box before November 1, 2018. As of the date of this filing, he has not heard anything about the status of his grievance.

44.     Plaintiff Lane cannot visit with family or friends. Generally, half the pod gets out in the morning and half in the afternoon. In order to contact him, a person has to go online, pay $5.00 for 15 minutes of time, and then he can receive the call on the kiosk.  Sometimes Plaintiff Lane cannot see the face of the caller because the kiosk is based on facial recognition and the person calling, as well as the inmate, has to be very still or the kiosk blurs. There are frequent technical issues that interfere with the phone call on the kiosk, and the kiosk visitation often ends abruptly before the time has expired with no refund to the inmate or the visitor.  Plaintiff Lane asserts that if he wants to make a phone call, he cannot initiate it. It has to come from the outside.

45. At the KCJ, where Plaintiff Lane is incarcerated, there are no tablets for law library access. Inmates must use a kiosk, which logs them off after 45 minutes.

### G. JESSICA MASE

46. Plaintiff Mase filed a grievance on the lack of in-person visitation and the overcrowding which has led to her sleeping on the floor. She reports she left her grievance in the grievance box in the 2C-Pod of KCDF prior to November 1, 2018, and she has heard no response.

47. When Plaintiff Mase was in classification, she was in a one person cell. There were three women in that cell including her. Currently, she is the second person in a one person cell.

48. Plaintiff Mase asserts that at times visitation on the kiosk does not work and the visitor and inmate can only hear one another. There is no picture.

49. Plaintiff Mase asserts that sometimes she is locked down all day.

### H. JESSICA MORGAN

50. Plaintiff Morgan filed a grievance regarding the lack of in-person visitation, inadequate medical treatment, lack of recreation, and inflated costs of commissary prior to November 1, 2018, in the B-Pod grievance box at KCDF. As of the date of this filing, she has not received a response to her grievance.

51. At the date of this filing, Plaintiff Morgan is more than 20 weeks pregnant and sleeping on the floor. She is the second person in a one person cell. Plaintiff Morgan suffers from anxiety and depression, and at times she is locked down for over 48 hours at a time. Plaintiff Morgan is charged $10.00 to see a nurse and an additional $5.00 for any prescribed medications.

52.     Plaintiff Morgan had to pay $45.00 to obtain the required book to start the in-patient drug treatment at the Knox County Facilities. If Plaintiff Morgan did not purchase the book and pay the $45.00, Defendants would prohibit Plaintiff Morgan from receiving drug treatment at the Knox County Facilities.

53.     Plaintiff Morgan asserts that it is difficult to obtain the tablets used for access to legal materials, as the line to obtain them is often long with limited time out of the cell, and the tablets are often not charged or non-functioning. Inmates get 15 minutes a day with the tablets unless they have a gold pass, but gold passes cost $5.00 a day. Indigent inmates do not have the means to purchase a gold pass.

54.     Plaintiff Morgan asserts that if there are more than two inmates in the room where the kiosk is located, the corrections officers will put everyone in lock down. If an inmate is too loud in line, the corrections officers put everyone in lock down.

I.     **MICHAEL RICE**

55.     Plaintiff Rice filed a grievance form in the Pod C3 grievance box at KCDF on October 30, 2018, but the grievance was never answered so he had no ability to appeal if it was denied.

56.     Plaintiff Rice is suffering from emotional problems from not being able to have in-person visitation. The kiosk and phone visitation are not adequate because the kiosk is most often fuzzy, costs $5.99 for 15 minutes of time, and frequently ends abruptly before the 15 minutes has expired with no refund to the visitor or the inmate.

57.     Plaintiff Rice applied for medical care for a sore in his mouth, was charged $10.00 for the visit and was then told that a mouth sore was a dental problem, not a medical problem. He paid an additional $10.00 for a dental call and requested a refund of the $10.00 for

the charge he incurred for a medical visit. The refund was denied, and a corrections officer told him, "File a grievance."

58. Plaintiff Rice was in classification for two weeks, where he did not get out for four to five days. There is no in-person visitation, and the kiosk screen is often blurry and/or freezes up. Plaintiff Rice asserts that the tablets often times do not work.

59. Plaintiff Rice is of the Jewish faith, and he has asked the Knox County Facilities' chaplain to give him a copy of the *Torah* and a yamaka. Those requests were denied. In addition, it took two months to get the Knox County Facilities to provide Plaintiff Rice with a kosher diet.

## J.   RICK SAYLES

60. Plaintiff Sayles filed a grievance form regarding lack of medical attention on October 29, 2018, in the KCDF Pod 3C grievance box. He never got an answer or the option to appeal if his grievance was denied.

61. Plaintiff Sayles fell in the shower because it was so slick, and he busted his knee. He is indigent, but he was charged $10.00 for a sick call and $5.00 for the ibuprofen he was instructed to take twice per day. His knee swelled up, but the only treatment he has been given at the Knox County Facilities is an Ace bandage despite his belief that he needs diagnostic testing and care by a medical specialist.

## K.   ROBERT THOMAS

62. Plaintiff Thomas filed a grievance form regarding the lack of in-person visitation, inadequate medical services, and the loss of money from the excessive charges at the Knox County Facilities prior to November 1, 2018, in the KCDF Pod 3D grievance box and never heard back. Plaintiff Thomas also asserts that the lack of proper staffing at the Knox County Facilities makes conditions dangerous for both inmates and staff.

63.     Plaintiff Thomas asserts that it takes too long to get sick calls answered by medical. For example, if an inmate suffers a serious medical condition such as chest pain, the kiosk takes too long and the inmate does not receive immediate medical attention.

64.     Plaintiff Thomas asserts that the kiosk visitation is insufficient. Sometimes the kiosk cuts the inmates off in the middle of their conversation and they are still charged for the kiosk call. Neither the inmate nor the visitor receives a refund.

65.     When Plaintiff Thomas was housed in Pod 3 of KCDF, he spent several days on lock down with no shower, no kiosk access and no exercise.

## L.     MATTHEW WALLS

66.     Plaintiff Walls filed a grievance form on October 13, 2018, in the Pod 3B KCDF grievance box. The grievance form was sent to medical and ignored. The corrections officers told him the grievance form was not properly completed. Plaintiff Walls filed another grievance form and, as of November 28, 2018, he had heard nothing as to the status of his grievance. The grievance forms filed by Plaintiff Walls complained of the banning of in-person visitation, lack of outdoor time, and the excessive cost of everything to include medical care. Indigent inmates cannot send emails or make telephone calls.

67.     Plaintiff Walls asserts that inmates only go outside about once per week because of a lack of adequate staffing at the Knox County Facilities. Plaintiff Walls asserts that doing legal research is difficult because the inmates are only given a few minutes to do it.

68.     Plaintiff Walls asserts that inmates have to pay for medical care and sometimes they still do not get medical care. If an inmate does not have money, they cannot see a doctor because there is a $10.00 charge. Plaintiff Walls also asserts that it can take two to four weeks after inmates ask for medical care before they are seen by medical.

69.     Plaintiff Walls asserts that sometimes inmates ask for grievance forms and the officers will not give them to inmates.

## M.      ABOLITION OF IN-PERSON VISITATION

70.     Plaintiffs state the following on information and belief.

71.     On April 14, 2015, the KCSD abolished all in-person, face-to-face visitation in favor of a newly installed video visitation system. The video visitation system is free on-site at the Knox County Facilities, or at a cost of $0.40 per minute from a visitor's own computer.[1]

72.     Inmates can no longer be in the same room as their loved ones as a result of the complete abolishment of in-person visitation.

73.     Inmate-facing kiosks were installed at the KCDF. These units were provided by Pay-Tel and Tech Friends, Inc.

74.     A remote visitor must pay $5.99 for each 15 minute remote visit. For every 15 minute remote session, the KCSD pockets $2.62 of that $5.99 as a "commission." From March 2014 to November 2017, Defendant Knox County, Tennessee collected $68,777.00 from "commissions," an average of $7,641.00 a month. "Remote visits, offered at a charge of $5.99 per half-hour, added up to more than $164,000 in total revenue over the past four years as of this spring. About $79,000.00 went back into county coffers and the rest into profits for provider Securus Technologies."[2]

75.     One hour of remote visitation every week for one year, costs $1,246.00 to the visitor.

76.     If the visitor has a computer, and if that computer has a webcam and a microphone, and if Internet access is available or the visitor can take their computer somewhere

---

[1] https://www.humanrightsdefensecenter.org/action/news/2014/pln-quoted-about-video-visitation-tennessee-jail/
[2] https://www.knoxnews.com/story/news/crime/2018/11/25/jail-video-visitation-knox-county-face-face/2027042002/

that does, one can log in to JailATM.com and set up an account. If an individual has a credit card, then a name, address, driver's license number (or officially issued state identification or passport number), and Social Security number has to provided. Once an account is approved - it is not instantaneous - a visit can be scheduled with an inmate. When the set time rolls around, the remote visitor logs on. The inmate logs on. At that point, both parties see each other and talk, much like Skype, except that remote video visits on Skype are free.

77. If one cannot afford that $0.40 a minute, the visitor can go to a newly renovated section of the KCWRC on Maloneyville Road, next to the main KCDF in the northeast part of the county. A visit has to be scheduled 24 hours in advance. Two 15 minute sessions can be scheduled back to back. However, if an individual is running late for the scheduled time, no extra time is granted.

78. Once an individual gets to the video call, one party can sit in a chair and stare at their loved one, whose image is now housed inside a black trapezoidal box attached to the wall. The kiosk is a little wider than a pay phone, with a video screen and a built-in camera and a phone receiver on the side.[3]

79. When the Knox County Commission voted to approve the system in September 2012, there was not any discussion. The item was on the consent agenda.

80. The company dispensed 45 computerized kiosks at no cost to the County, provided every 15 minute video session would cost $5.99. The County receives 43.75% of those fees.

---

[3]https://www.humanrightsdefensecenter.org/action/news/2014/pln-quoted-about-video-visitation-tennessee-jail/

81.     The Knox County Facilities' own data shows no drop in reported cases of contraband as a result of abolishing in-person visitation. Prior to the ban, visitors could not touch the inmates and had to speak through a plexi-glass screen.[4]

82.     Banning in-person visitation has made the Knox County Facilities less safe for both inmates and staff. Even after trimming the data to remove outliers, the rate of assaults on staff and other inmates tripled after the ban was enacted in April 2014. *Id.* at 3.

83.     The average rate of disciplinary infractions has increased after in-person visits were abolished. *Id.* at 5.

**N.     DENIAL OF ADEQUATE OPPORTUNITY FOR OUTDOOR EXERCISE**

84.     Plaintiffs state the following on information and belief.

85.     The KCDF provides no access to outdoor exercise for the inmates housed in that facility. The inmates are subjected to a concrete room with little to no natural light.

86.     Due to overcrowding and lack of staff, inmates do not have the opportunity to get out of their cell for exercise. Inmates are not let out of their cells several days each week and such practice is a common occurrence.

87.     There are many days when the inmates do not even have access to the paltry exercise area provided at the KCDF because of lack of staff available to supervise the inmates. When time outside is offered, which is grossly inadequate, it does not meet the minimum requirements a person would need to maintain good health.

88.     Additionally, the lack of adequate time outside of the cells creates other issues such as: causing personal stress for inmates, lack of personal safety, lack of proper hygiene,

---

[4] To what End?: Assessing the Impact of the Knox County Jail's Ban on In-Person Visits. Published by Face To Face Knox, Knoxville, TN January 29, 2018.

increased risk of violence and inadequate sleeping arrangements. Combined with overcrowding and understaffing, these things create unsafe conditions.

### O. INFLATED COMMISSARY AND FEES

89. Plaintiffs state the following on information and belief.

90. In 2014, the KCSD had $872,766.00 in revenues from commissary fees. That includes revenue from Pay-Tel for phone calls and ATM fees, snacks, haircuts, toothbrushes, soap - everything that inmates purchased, over cost, for 12 months.

91. The amount was an increase of $33,333.00 over the previous year.

92. Jail ATM, Pay-Tel Communications, Securus Technologies, and Aramark profit from the fees and additional charges associated with their products.

93. Furthermore, if inmates have outstanding costs owed to the Knox County Facilities, any money placed in those inmates' accounts, if less than the outstanding costs, will go directly to the Knox County Facilities, rather than to the inmate. Furthermore, if inmates have fees outstanding with the Knox County Facilities, the Knox County Facilities collect money placed in inmates' accounts to cover those fees. This is on top of the fees charged for use of phones, tablets and email messaging.

### P. LACK OF PROPER ACCESS TO A LAW LIBRARY

94. Plaintiffs state the following on information and belief.

95. Inmates are allowed access to law library resources through tablets at the KCDF. These tablets are the *de facto* means by which inmates may attempt to access a law library.

96. Inmates can rent the tablets for 24 hours at a time at a rate of $4.99 a day, or can use the tablets for free for 15 minutes at a time, every two hours, as available. Inmates can also use kiosks for 45 minutes at a time for law library access. There are tablets available, at least in

one pod, at the guard desk. However, this information is not widely disseminated, and circulation of the tablet is completely subject to the on-duty guards' discretion.

97.     Tablets are only available in 15 minute increments every two hours to inmates unable to pay the 24 hour rental fee. Sometimes the inmates do not even get that because there are no working tablets available.

### Q.     CRUEL AND UNUSUAL PUNISHMENT IN THE FORM OF INADEQUATE MENTAL HEALTH AND GENERAL MEDICAL TREATMENT

98.     Plaintiffs state the following on information and belief.

99.     Knox County Facilities have failed to provide proper access and treatment to inmates in the Knox County Facilities. During booking, inmates do not receive a mental health evaluation, and in many cases, inmates fail to receive their medications in the proper dosage or at the proper time. Inmates are simply given a piece of paper informing them of the procedure in which they can follow to access a nurse. The appointment for the nurse may be anywhere between a day to a couple of weeks in the future, and the failure to address health concerns can cause safety issues with other inmates as well as for the staff.

100.     Upon information and belief, there has been an increase in the number of inmates housed in the Knox County Facilities who develop suicidal thoughts and the number of inmates who attempt suicide.

101.     There are infirmary beds within the medical unit of the KCDF with six medical housing beds and two infirmary beds for females (KCDF Pod 6B-Female).

102.     There are infirmary beds within the medical unit of the KCDF with 10 medical housing beds and two infirmary beds for males (KCDF Pod 6AB-Male).

103. The Knox County Facilities' staff is not adequately trained to meet the needs of inmates with mental health conditions.

104. Although Defendants have pledged to train each Knox County Facilities' staff member to deal with inmates with mental health issues, only a small percentage of the staff have actually received training.

105. The KCDF has not created an effective schedule to ensure all staff will receive training to meet the needs of inmates with mental health issues.

106. The inmates are dependent on the staff to take care of their needs, and the failure to do so is a violation of the inmates' Eighth Amendment rights. Plaintiffs aver that the Defendants acted, and continue to act, with deliberate indifference to Plaintiffs' health and/or safety.

**R.    INHUMANE ISOLATION VIA 23/1 LOCKDOWN**

107. Plaintiffs state the following on information and belief.

108. The KCDF is overcrowded.

109. The KCDF's maximum capacity is 1,036 inmates. As of June 30, 2018, the KCDF was housing 1,163 inmates (in 2017 the number was 1,054). However, the KCDF is only equipped to accommodate 1,036 inmates, and there is a significant overcrowding issue, leaving 127 inmates without a proper bed.

110. Many cells house three inmates in a cell designed for two individuals.

111. Due to staffing issues, the inmates are often not allowed out of their cells for periods of over 24 hours, and generally all weekend.

112. Typically, the 23/1 lockdown is reserved for inmates on maximum security who are receiving punishment for a violation of a rule or poor behavior. However, upon information

and belief, inmates are not granted a minimum of one hour outside of their cells for days at a time.

113. The inmates at KCDF have been subjected to 23/1 lockdown over a consistent period of time and not as a form of punishment given to a few inmates. This 23/1 lockdown is pervasive throughout the entire facility, and it is believed that Plaintiffs are on 23/1 lockdown multiple times a week due to lack of staffing. Inmates do not have time to get sufficient exercise, take a shower, or use the kiosk.

114. Inmates who are not classified as maximum security are not receiving their minimum one hour outside of their cell for days at a time.

115. The lack of staffing does not excuse treatment or conditions that violate the Plaintiffs' constitutional rights.

116. The long-term deprivation of meaningful social interaction has had a negative impact on the Plaintiffs.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

117. The named Plaintiffs have exhausted their administrative remedies. Attached to this Complaint as Exhibit 1 are Plaintiffs' Affidavits and Unsworn Declarations 28 U.S.C. § 1746. Attached to this Complaint as Exhibit 2 is a copy of a Grievance Form completed by Plaintiff Matthew Walls.

## CLASS ALLEGATIONS

118. The treatment to which Plaintiffs, and the class they represent, have and will be subjected - unconstitutional conditions at the Knox County Facilities - were all performed pursuant to policies, customs and/or practices of Defendants.

119. Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an Order declaring that Defendants' treatment of Plaintiffs pursuant to these policies, customs and/or practices is unlawful. Plaintiffs bring this action on their own behalf and on behalf of all persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(b)(3). Plaintiffs seek certification of a class defined as follows: All persons who have been and are incarcerated at the Knox County Facilities past, present and future. Additionally, class certification is sought for all persons who are family members, friends, employers and/or other persons who have been negatively impacted by said unconstitutional practices.

120. Pursuant to Federal Rule of Civil Procedure 23(a), the members of the class are so numerous that joinder of all members is impractical. Plaintiffs do not know the exact number of class members. Plaintiffs are informed and believe, and thereupon allege, that there are more than 100 persons in the class defined above.

121. Pursuant to Federal Rule of Civil Procedure 23(a), Plaintiffs are informed and believe, and thereupon allege, that there are questions of law and fact common to the class, including but not limited to:

- Whether the abolishment of in-person visitation violates the substantive due process mandate of the Fourteenth Amendment to the United States Constitution, and the First or Eighth Amendments as applicable to the States through the Fourteenth Amendment;

- Whether the Plaintiffs are subject to cruel and unusual punishment by denial of adequate opportunity for outdoor exercise is a violation of the Eighth Amendment to the United States Constitution;

- Whether Defendants are liable to Plaintiffs for violating the First, Fourth, Eighth and Fourteenth Amendment rights of the Plaintiff class; and

- Whether Defendants should be enjoined from continuing these inhumane and unconstitutional practices.

122. Pursuant to Federal Rule of Civil Procedure 23(a), Plaintiffs' claims are typical of the class they seek to represent. Plaintiffs and the class they seek to represent were all subjected to unconstitutional practices at the Knox County Facilities. Plaintiffs have the same interests and have suffered the same type of injuries as the proposed class. Each proposed class member suffered actual damages as a result of the challenged conduct. Plaintiffs' claims arose because of Defendants' policies, customs and/or practices. Plaintiffs' claims are based upon the same legal theories as the claims of the proposed class members.

123. Plaintiffs' counsel has the resources, experience and expertise to successfully prosecute this action against Defendants. Counsel know of no conflicts among any members of the class, or between counsel and any members of the class.

124. Pursuant to Federal Rule of Civil Procedure Rule 23(b)(3), upon certification, class members must be furnished with the best notice practicable under the circumstances.

## CLAIMS FOR RELIEF

## COUNT ONE

I. **Ending of in-person visitation to pay to view policy violates Plaintiffs' rights under the First, Eighth and Fourteenth Amendments to the United States Constitution.** *Overton v. Bazzetta*, **539 U.S. 126 (2003)**

125. The first count is asserted by Plaintiffs and the proposed class against all Defendants.

126. Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

127. The in-person visitation ban violates the substantive due process mandate of the Fourteenth Amendment of the United States Constitution, and the First and Eighth Amendments as applicable to the States through the Fourteenth Amendment.

128. Plaintiffs have a constitutional right to contact and in-person visitation.

129.     Defendants' arbitrary ban on all in-person visitation from family members, employers and friends violates the constitutional prohibition against cruel and unusual punishment. The ban makes it difficult for families to maintain relationships with inmates. Numerous studies have found that inmates' family relationships and ties to family members during incarceration improve post-release outcomes. Christy A. Visher & Jeremy Travis, *Transitions from Prison to Community*, 29 ANN. REV. SOC. 89, 100 (2003) (collecting sources). "[S]ubstantial empirical evidence" indicates "that frequent, high-quality visitation can reduce prison violence, maintain family bonds, break the intergenerational cycle of incarceration, and smooth the reentry process, thereby reducing recidivism rates." Chesa Boudin, Trevor Stutz & Aaron Littman, *Prison Visitation Policies: A Fifty-State Survey*, 32 YALE L. & POL'Y REV. 149, 151-52 (2013) (footnotes omitted) (collecting sources).

130.     The ban on in-person visitation is a dramatic departure from accepted standards for conditions of confinement. *See Sandin v. Conner,* 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

131.     The ban on in-person visitation infringes on inmates' First Amendment right of intimate association and is not reasonably related to a valid penological objective.

## COUNT TWO

**II.     Cruel and unusual punishment by denial of adequate opportunity for outdoor exercise.**

132.     The second count is asserted by Plaintiffs and the proposed class against all Defendants.

133.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

134.     The Eighth Amendment to the United States Constitution does not mandate comfortable prisons, but it does forbid inhumane conditions. *Farmer v. Brennan,* 511 U.S. 825,

832 (1994). If (1) treatment of an inmate is, objectively, a "sufficiently serious" deprivation of rights, and (2) prison officials have, subjectively, a "sufficiently culpable state of mind," the Eighth Amendment has been violated. *Id.* at 834. The inhumane, cruel, and baseless policies of placing inmates in tiny confined cells for long periods of time with little human contact, activity or exercise violates the inmates' rights under the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

135.    Denial of adequate opportunity to be outside and to have adequate outdoor exercise during the time Plaintiffs are incarcerated at the Knox County Facilities constitutes cruel and unusual punishment contrary to the Eighth Amendment to the United States Constitution.

136.    The denial of adequate opportunity for outdoor exercise serves no legitimate penological interest. Maximum security inmates are entitled to one hour of outdoor exercise each day. However, all inmates are being denied the opportunity to receive a sufficient amount of time outside of their cells. Prisoners are kept in small, cold cells with either two or three cell mates inside. The exercise area is a concrete floor with doors on either side connecting two pods. There is a tiny window, but no real access to the outside world. There is no fresh air coming in, and there is not enough space for all inmates due to overcrowding.

## COUNT THREE

**III.    Inflated cost of commissary and fees in violation of the Fifth Amendment to the United States Constitution.**

137.    The third count is asserted by Plaintiffs and the proposed class against all Defendants.

138.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

139.     The inflated cost of commissary and fees associated with jail-issued ATM use and cards, and the inflated cost of phone calls violates Plaintiffs' Fifth Amendment protection against deprivation of property without due process.

140.     Plaintiffs' unconstitutional deprivation of their property results from a governmental policy. Defendants are responsible for actions of JailATM, Aramark and Securus. Defendants thereby deprived Plaintiffs of rights, privileges and immunities protected by the United States Constitution or the laws of the United States.

141.     The Knox County Facilities sanctioned overcharging by JailATM, Aramark and Securus Technologies. When the technology malfunctions, inmates are still charged for the full service, despite not receiving the full benefit of the service. In addition, the KCDF's access of inmate funds to cover outstanding fees demonstrates Defendants' intentional interference with the possession of the personal property of Plaintiffs.

142.     Plaintiffs possessed a constitutionally protected interest in the monies Defendants took from them. *Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6th Cir. 1997). Defendants' card fees and the interest earned constitute a taking of property in violation of the Fifth Amendment to the United States Constitution. The Tennessee Court of Appeals has found that "the due process clause protects a prisoner's property interest in his or her trust fund account, and the Department cannot take that money without due process of law unless the statutes or the Department's policies provide otherwise." *Jeffries v. Tenn. Dep't of Corr.*, 108 S.W.3d 852, 872 (Tenn. Ct. App. 2002). While inmates are not generally afforded constitutional protections related to inflated commissary prices alone, *see Newell v. Sheriff*, No. 1:11-cv-86, 2014 WL 4411045, at *9 (E.D. Tenn., Sept. 8, 2014) (quoting *Bennett v. Sheahan*, 1999 WL 967534, at *4 (N.D. Ill., Oct. 5, 1999)), they continue to have a property interest in the money in their accounts, the

deprivation of which violates the Fifth and Fourteenth Amendments to the United States Constitution. *See Hobbs*, 106 F.3d at 1287. The overcharging of inmates in the commissary and for communication services deprives inmates of their property and constitutional rights.

## COUNT FOUR

IV.    **Lack of proper access to law library and reading material.**

143. The fourth count is asserted by Plaintiffs and the proposed class against all Defendants.

144.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

145.    Plaintiffs have "the fundamental constitutional right of access to the courts" which "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).

146.    Defendants have limited Plaintiffs' access to legal materials, violating Plaintiffs' constitutional right to have meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 830 (1977). Inmates are limited by the number of tablets available and the 15 minute free access to the tablets bearing legal materials. They get 15 free minutes a day, when they can get a tablet, and when the power supply is charged. As such, Plaintiffs have not been able to prepare relevant legal forms and have not been able to comply with court orders and due dates.

147.    By limiting time and access to necessary and relevant legal materials, Plaintiffs have suffered systematic and widespread actual injury, thus violating the *Bounds* standard. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996). Even if the tablets contain full access to a sufficient legal library, the *Bounds* test requires not that correctional facilities have a library, but rather that inmates have meaningful access to legal materials in order to have access to the courts. "In the

absence of some sort of direct legal assistance, which need not be by trained lawyers, the inmates must be given access to a library as required in *Bounds*. That access is not met by a system allowing a prisoner to check out books through a weekly bookmobile." *Morrow v. Harwell*, 768 F.2d 619, 623 (5th Cir. 1985) (referenced in *Canterino v. Wilson*, No. 86-6067, 1989 WL 4013, at *4 (6th Cir. Apr. 10, 1989) (aff'g 875 F.2d 862)). Even if the tablets provide the same resources as would be available in a law library itself, "the existence of a law library, however adequate, does not *per se* eliminate the necessity for further measures to protect the right of access to the courts." *Canterino*, 1989 WL 40131, at *3. Fifteen minute access to tablets with law library information that can only increase to 24-hour access with a $4.99 rental-type fee allows for *neither* access to legal materials *nor* access to the courts.

148.    Requiring inmates to pay for this access violates the rights ensured by *Bounds*, and creates an undue burden on indigent defendants, as tablets are only available in 15 minute increments every two hours to inmates unable to pay the 24 hour fee. Sometimes they do not even get those 15 minutes because there are no working tablets available. This denial of adequate access to legal materials deprives inmates of their constitutional rights.

149.    Furthermore, Plaintiffs will meet their burden by "demonstrat[ing] that the alleged short-comings in the library or legal assistance program hindered [their] efforts to pursue [] legal claim[s]." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

150.    Plaintiffs have suffered actual injury as a result of the price-inhibitive, content-limited and time-limited access to legal materials imposed by the use of the tablets. As a result, their access to the courts has been hindered unconstitutionally.

151.    Moreover, "the arbitrary denial of access to published materials violates an inmate's First [A]mendment rights," *Martin v. Tyson*, 845 F.2d 1451, 1454 (7th Cir.) (*per*

*curiam*) (citing cases), *cert. denied,* 488 U.S. 863, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988), as well as a pretrial detainee's right not to be punished under the Due Process Clause. *Kincaid v. Rusk,* 670 F.2d 737, 743–44 (7th Cir. 1982). *See also Bell v. Wolfish,* 441 U.S. 520, 545–52, 99 S.Ct. 1861, 1877–81, 60 L.Ed.2d 447 (1979).

152.    Defendants' limitation of Plaintiffs' access to legal materials also violates the Tennessee Corrections Institute Minimum Standards for Local Adult Correctional Facilities, which states, "Inmates shall have unrestricted and confidential access to the courts. Inmates shall have the right to present any issue before a court of law or governmental agency. . . ." Tenn. Advisory Commission on Intergovernmental Relations, *Housing Tennessee's Convicted Felons: Improving Outcomes while Balancing State and County Needs* 107 (Aug. 2017).

153.    Furthermore, while inmates represented by counsel generally have sufficient access to the courts for their criminal cases based on that representation, *see Holt v. Pitts,* 702 F.2d 639, 640 (6th Cir. 1989) (pre-*Lewis* case holding that access to the courts was sufficient when inmate had court appointed counsel), inmates must also be able to "challenge the conditions of their confinement." *Lewis,* 518 U.S. at 355. Inmates who are represented by counsel must adequately allege that court appointed counsel is not sufficient in pursuing claims based on confinement conditions. *See e.g., Martucci v. Johnson,* 944 F.2d 291, 295 (6th Cir. 1991) (holding that "nothing in the record [lent] support to the presumption that Martucci was barred from discussing his segregated confinement - and the legal implications thereof - with his appointed attorney"). Plaintiffs assert that even when represented by counsel, adequate access to the courts regarding their constitutional claims requires adequate access to legal materials.

### COUNT FIVE

**V.     Cruel and unusual punishment in the form of inadequate medical and mental health treatment.**

154.     The fifth count is asserted by Plaintiffs and the proposed class against all Defendants.

155.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

156.     Plaintiffs contend that the KCDF has engaged in serious systemic deficiencies in conditions of confinement in isolation cells, and in provision of adequate medical, dental and mental health care services, in violation of the Eighth Amendment to the United States Constitution. This denial of medical care results in pain and suffering which serves no penological purpose. The denial of a prisoner's serious medical needs may amount to cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97 (1976). In *Estelle,* the Supreme Court noted that"[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical torture or a lingering death[.] … In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose." *Id.* at 103. The inadequate medical and mental health treatment within the KCDF amounts to cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution.

157.     Additionally, the Defendants have shown deliberate indifference to the safety of the inmates by failing to provide adequate mental health services or sufficient training to the officers in the Knox County Facilities responsible for the care of the inmates. The failure to address health concerns (both mental and physical) can cause safety issues with other inmates as well as for the staff. This egregious oversight in mental health services systematically puts inmates at risk of pain, injury and death.[5] By failing to address the fundamental needs of inmates

---

[5] For example, in a recent case in Colorado, a mentally ill inmate gouged out his own eyes after he was denied treatment for psychosis. https://www.theguardian.com/us-news/2017/dec/08/prisoner-gouges-out-eyes-colorado-boulder-mental-health-lawsuit

with mental health issues, the Knox County Facilities are not meeting their constitutional mandate to protect against cruel and unusual punishment.

158.    Defendants' unconstitutional policies, practices and customs, as listed above, are ongoing, continue to violate Plaintiffs' rights and were (and are) the moving force behind the injuries Plaintiffs suffered as a direct result of the constitutional violations. As such, Plaintiffs have no adequate remedy at law.

## COUNT SIX

**VI.    Inmates are subjected to inhumane isolation via 23/1 lockdown with no punitive or short-term purpose.**

159.    The sixth count is asserted by Plaintiffs and the proposed class against all Defendants.

160.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

161.    Defendants have subjected Plaintiffs to inhumane isolation via 23/1 (23 hours confined in a cell and one hour out of the cell) lockdown that serves no punitive or short-term purpose. Ordinarily, inmates may be placed on 23/1 lockdown to serve as punishment, which is typically limited to a brief period in which inmates lose privileges. Courts have held that short-term exposure to 23/1 lockdown serves a proper purpose and is not a violation of any constitutional rights. However, the inmates at the Knox County Facilities have been subjected to 23/1 lockdown over a consistent period of time, and not as a form of punishment given to a few inmates. This 23/1 lockdown is pervasive throughout the Knox County Facilities, and it is believed that Plaintiffs are on 23/1 lockdown multiple times a week due to lack of staffing. Inmates do not have time to get sufficient exercise. Many studies suggest that 23/1 lockdown has a negative effect on inmates' mental health. In addition, studies have shown that those who do not have a mental illness prior to entering jail often develop one while in jail, and those who are

already diagnosed with a mental illness deteriorate. Subjecting inmates to consistent 23/1 lockdown violates the rights of the inmates because it is not a temporary revocation of privileges and serves no penological interest. Inmates are consistently denied even that one hour out of their cells due to staffing and other deficits. They are placed on lockdown with regularity, resulting in being trapped in an overcrowded cell for over 48 hours. The Knox County Facilities have constructively created a state of permanent 23/1 lockdown and have violated Plaintiffs' rights to be free from cruel and unusual punishment.

162.    Defendants' use of 23/1 lockdown is especially egregious as most of the inmates at the Knox County Facilities are pretrial detainees. "For a convicted prisoner, loss of liberty and separation from society should be the sole punishments imposed by imprisonment. For a prisoner not serving a sentence for a crime, the purpose of imprisonment should be to assure appearance of the prisoner at trial and to safeguard the public, not to punish." [6]

163.    According to the ABA Standards for Criminal Justice: Treatment of Prisoners, "Correctional authorities should provide each prisoner, at a minimum, with a bed and mattress off the floor, a writing area and seating, an individual secure storage compartment sufficient in size to hold personal belongings and legal papers, a source of natural light, and light sufficient to permit reading." Cite 23-3.3 Housing areas. As KCDF is overcrowded, the inmates are not being provided with the minimum of a bed and mattress off of the floor because three inmates are being forced to share a cell designed for two individuals.

164.    The ABA Standards also state that "a lack of resources should not excuse treatment or conditions that violate prisoners' constitutional or statutory rights" and that correctional facilities should be "appropriately staffed".

---

[6]

https://www.americanbar.org/groups/criminal_justice/publications/criminal_justice_section_archive/crimjust_standa rds_treatmentprisoners/

165. In *Bishawi v. Northeast Ohio Corr. Ctr.*, the Sixth Circuit held that "a temporary loss of privileges and confinement--without any allegations that basic human needs were not met--cannot establish an Eighth Amendment claim." *Bishawi v. Northeast Ohio Corr. Ctr.*, 628 Fed. Appx. 339, 345–46 (6th Cir. 2014). Restrictions placed on inmates should be necessary and proportionate to the legitimate objectives for which those restrictions are imposed. Here, the confinement is not temporary and is a continuous occurrence within KCDF. The confinement of inmates violates their Eighth Amendment rights because it deprives them of a basic human need.

166. In *Turner v. Safley*, the United States Supreme Court made clear that "[p]rison walls do not form a barrier separating inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78 (1987).

167. Individuals retain certain fundamental rights, even when incarcerated. The United States Constitution protects these rights for good reason. Incarceration can have a drastic effect on a person. Oftentimes, a prisoner's connections to their family or religious community may be their only source of hope. Stripped of these connections, a person will not only endure more difficulties during incarceration, but may also lack the community ties necessary to assist them upon release. Social interaction and meaningful activity are crucial to human well-being. By definition, solitary confinement isolates individuals and denies them mental, emotional, and environmental stimulation. *Reid v. Wetzel.*1:18-cv-00176-JEJ (M.D. Pa.). A 2016 report by the United States Department of Justice recommends the use of solitary confinement only when it serves a specific penal purpose and when accompanied by regular review by a multi-disciplinary committee.[7]

168. The long-term deprivation of meaningful social interaction has had a negative

---

[7] U.S. Dep't Justice, Rep. & Recommendations Concerning the Use of Restrictive Housing at 99 (Jan. 2016), available at goo.gl/ky0xEg (last viewed Dec. 18, 2017).

impact on the Plaintiffs.

169.    The Defendants do not have a specific penal purpose or legitimate objective for engaging in long-term lockdown of 23-24 hours, and have violated the Eighth Amendment right of Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request relief as follows:

1.    A declaration that Defendants' policies, practices and customs violate the United States Constitution.

2.    A finding that as a direct and proximate result of Defendants' actions and inactions, Plaintiffs have suffered injuries entitling them to declaratory and injunctive relief against the Defendants.

3.    An injunction directing Defendants to end the ban on in-person visitation for Plaintiffs.

4.    An injunction directing the Defendants to provide Plaintiffs with an adequate opportunity for exercise.

5.    An injunction directing the Defendants to stop the confiscatory practices of charging too much money for commissary, charging for use of a kiosk to communicate with friends and family, as well as law library services, and charging Plaintiffs to transfer money from one account to another. All of these practices deprive the Plaintiffs of property without due process.

6.    An injunction directing the Defendants to provide the Plaintiffs with proper access to a law library in conformity with the fundamental rights of Plaintiffs under the Fourth and Fourteenth Amendments to the United States Constitution.

7.      An injunction directing Defendants to provide adequate and constitutional access to healthcare services (both physical and mental) to all Plaintiffs.

8.      An injunction directing Defendants to provide proper mental health training for the staff at the Knox County Facilities.

9.      An injunction banning the practice of allowing Plaintiffs out of their cell for only one hour a day and, in some cases, not allowing the Plaintiffs out of their cells for days at a time. The pods at both the KCJ and the KCDF, by their size and configuration, are designed to allow inmates to be out of their cells for much of the day to use the phone/kiosk, shower, watch television, eat their meals, play cards, etc. This practice of locking down Plaintiffs in their tiny cells (many of which have one or two extra people in them) for all but a fraction of an hour a day, or all day, violates basic human rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

10.     An award of nominal, punitive, compensatory and presumed damages for each violation of Plaintiffs' First Amendment rights to be proven at trial.

11.     An award of nominal, punitive and compensatory damages for each violation of Plaintiffs' Fourteenth Amendment right to due process in an amount to be proven at trial.

12.     An award of nominal, punitive and compensatory damages for each violation of Plaintiffs' Eighth Amendment rights to be proven at trial.

13.     An award of nominal, punitive and compensatory damages for each violation of Plaintiffs' Fifth Amendment rights to be proven at trial.

14.     Costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988, and under other applicable law.

15.     Pre-judgment and post-judgment interest.

16.     The right to conform the pleadings to the proof and evidence presented by trial by jury.

17.     Such other relief as the Court deems just and equitable.

## JURY DEMAND

18.     Plaintiffs, by and through their attorneys, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted this the 23rd day of December, 2018.

s/John E. Eldridge
John E. Eldridge, BPR 006667
Attorney for Plaintiffs
Eldridge & Blakney, P.C.
P.O. Box 398
Knoxville, TN 37901-0398
865-544-2010

s/Francis L. Lloyd, Jr.
Francis L. Lloyd, Jr., BPR 009808
Attorney for Plaintiffs
9111 Cross Park Drive, Suite D200
Knoxville, TN 37923
865-470-4070