# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

MICHAEL AMBLE, FLOYD COULSON,
JOHN HICKS, ALONZO HOSKINS,
DAVID JOHNSON, CURTIS LANE,
JESSICA MASE, JESSICA MORGAN,
MICHAEL RICE, RICK SAYLES
ROBERT THOMAS AND MATTHEW WALLS,

On behalf of themselves and all similarly
Situated persons,

        Plaintiffs

vs.

KNOX COUNTY, TENNESSEE

        Defendants

No. 3:18-cv-00538-TAV-DCP

CIVIL RIGHTS CLASS ACTION
COMPLAINT FOR DAMANGES
AND INJUNCTIVE AND
DECLATORY RELIEF

JURY TRIAL DEMANDED

## SECOND AMENDED COMPLAINT- CLASS ACTION

### INTRODUCTION

1. This is a civil rights class action for damages and injunctive relief, pursuant to the

First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, arising from

the cruel and unconstitutional policies of the Knox County Sheriff's Department (hereinafter

"KCSD") in regards to its abolition of all in-person visitation, inadequate exercise opportunities,

inflated commissary prices, lack of access to a proper law library, inadequate mental health

treatment, and the lockdown periods at the jails it controls, supervises and runs. These policies

serve no legitimate penological interest and are at odds with the regulations of the Tennessee

Corrections Institute Minimum Standards for Local Adult Correctional Facilities and the

has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. This court also has jurisdiction under provisions of 28 U.S.C. § 2201 as this action is filed to obtain declaratory relief regarding the constitutionality of the actions and policies of local government.

7. This Court has jurisdiction over claims seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure, as well as nominal and compensatory damages against all Defendants. Plaintiff's claim for attorney's' fees and costs is predicated upon 42 U.S.C. § 1988, which authorizes the award of attorney's' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

8. Plaintiffs allege that the Defendant acted as described herein with the intent to injure, vex, annoy and harass Plaintiffs, and subject Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights with the intention of causing Plaintiff's' injury and depriving them of their constitutional rights.

9. As a result, Plaintiffs seek declaratory and injunctive damages against the Defendant.

10. Additionally, Plaintiff seeks judgment against Defendants under T.C.A. § 8-8-302, which states "Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office" Tenn. Code Ann. § 8-8-302.

## PARTIES

11. Plaintiff **MICHAEL AMBLE** is a United States citizen. At the time of the filing of the Original Complaint he was an inmate at the Defendant's Facility. He was released from the custody of the Knox County Sheriff on December 10, 2018.

12. Plaintiff **FLOYD COULSON** is a United States citizen. He was an inmate at the Defendant's Facility at the time of filing of the Original Complaint. He was released from custody on November 16, 2018.

13. Plaintiff **JOHN HICKS** is a United States Citizen. At the time of the filing of this Second Amended Complaint he is an inmate at the KCDF located at 5001 Maloneyville Road, Knoxville, Tennessee, 37918. He was an inmate in the Defendant's custody at the time of filing of the Original Complaint as well as the First Amended Complaint.

14. Plaintiff **ALONZO HOSKINS** is a United States Citizen. He was an inmate at the Defendant's Facility at the time of filing the Original Complaint and the First Amended Complaint. He was released from custody on October 1, 2019.

15. Plaintiff **DAVID JOHNSON** is a United States Citizen. He was an inmate at the Defendant's Facility at the time of filing the Original Complaint and the First Amended Complaint. He was released from custody on June 28, 2019.

16. Plaintiff **CURTIS LANE** is a United States Citizen. He was an inmate at the Defendant's Facility at the time of filing the Original Complaint and the First Amended Complaint. He was released from custody on July 20, 2019.

17. Plaintiff **JESSICA MASE** is a United States Citizen. She was an inmate at the Defendant's Facility at the time of filing the Original Complaint and the First Amended Complaint. She was released from custody on May 22, 2019.

18. Plaintiff **JESSICA MORGAN** is a United States Citizen. She was an inmate at the Defendant's Facility at the time of filing the Original Complaint and the First Amended Complaint. She was released from custody on July 2, 2019.

19. Plaintiff **MICHAEL RICE** is a United States Citizen. He was an inmate at the Defendant's Facility at the time of filing the Original Complaint and the First Amended Complaint. He was released from custody on May 7, 2019.

20. Plaintiff **RICK SAYLES** is a United States Citizen. He was an inmate at the Defendant's Facility at the time of filing the Original Complaint and the First Amended Complaint. He was released from custody on May 31, 2019.

21. Plaintiff **ROBERT THOMAS** is a United States Citizen. He was an inmate at the Defendant's Facility at the time of filing the Original Complaint. He was released from custody on June 1, 2018

22. Plaintiff **MATTHEW WALLS** is a United States Citizen. He was an inmate at the Defendant's Facility at the time of filing the Original Complaint. He was released from custody on November 29, 2018.

23. Defendant, KNOX COUNTY, TENNESSEE is a municipality formed under the laws of the State of Tennessee. The KCSD is a municipal agency or department of the Defendant, Knox County, Tennessee, and operates the Knox County Jail Facilities in Knox County, Tennessee. The official Knox County Jail Facilities' policies at issue in this case were the moving force behind the constitutional violations alleged herein. The Knox County Jail facilities house convicted prisoners, pretrial detainees, and federal detainees.

24. All of Defendant's acts and omissions alleged herein were taken under color of state law and violated the plaintiffs' constitutional rights. Defendant Knox County, Tennessee established, maintained, and enforced the policies at issue in this action and continue to do so as of the date of the filing of this Second Amended Complaint.

25. Plaintiffs will ask this Court for leave to amend this complaint to insert further charging allegations when such facts are ascertained.

## GENERAL ALLEGATIONS

26. Plaintiffs MICHAEL AMBLE, FLOYD COULSON, JOHN HICKS, ALONSO HOSKINS, DAVID JOHNSON, CURTIS LANE, JESSICA MASE, JESSICA MORGAN, MICHAEL RICE, RICK SAYLES, ROBERT THOMAS, MATTHEW WALLS, and all other similarly situated persons are herein referred to collectively as "Plaintiffs."

27. Defendant KNOX COUNTY, TENNESSEE shall be referred to "Defendant."

## STATEMENT OF FACTS

### A. MIKE AMBLE

28. Plaintiff Mike Amble is an inmate at the KCJ. Plaintiff Amble filed a grievance form complaining of poor sanitary conditions, no in-person visitation, and exposure to communicable diseases, and he left it with a guard prior to November 1, 2018, but there was never any response. Plaintiff Amble also filed a grievance as to the commissary price gouging and the overcrowding at the KCJ.

29. Plaintiff Amble has lost a significant amount of weight since being housed at the KCJ, has access to very little food, and has no access to exercise equipment. He has a friend who wanted to put money on his commissary account but could not figure out how to use the kiosk. His friends and/or family members who wish to visit with him, but who do not have phones or computers with internet access, must go to the KCDF to communicate via the kiosk there.

30. Plaintiff Amble avers that the Kiosk has a "fastcase" service for legal research, but is extremely difficult to use and there are no tablets available at the KCJ. He has lots of legal issues he needs to research, but he cannot access law library books and the kiosk is virtually worthless.

## B.   FLOYD COULSON

31.  Plaintiff Coulson filed a grievance regarding access to medical care, lack of in-person visitation, lack of recreational time and the inflated cost of commissary. His grievance was denied and he appealed it. As of the date of this Second Amended Complaint, Plaintiff Coulson has received no response as to the status of the appeal of his grievance.

32.  Mr. Coulson believes he has a tumor in his throat; which causes him to have difficulty swallowing. He is supposed to be on a soft diet which Defendant refuses to supply. As a consequence, Plaintiff Coulson has lost approximately 50 pounds. When he went to medical about his tumor, he was told "We can't do anything for you. Wait until you get to prison, and they will help you." KCJ has charged him $200.00 for past medical expense, and he has no money on his books.

33.  Plaintiff Coulson was locked down in his cell for extended periods of time without being let out to use the kiosk, take a shower or practice ordinary hygiene, or to have the opportunity for outdoor exercise. Plaintiff Coulson maintains that 'at best' he is allowed out of his cell between a half hour and one hour per day, while 'at worst,' he has remained in his cell for days at a time; extending to as much as four to five days without being let out.  Moreover, when he is allowed to go to the recreation yard, there is nothing there. The recreation yard is a rectangular space with high walls and nothing in it.

34.  Plaintiff Coulson maintains that he has suffered from poor mental health care. Plaintiff Coulson suffers from schizophrenia and post-traumatic stress disorder, and he is not receiving the care he needs.

### C.   JOHN HICKS

35.   Plaintiff Hicks filed a grievance regarding the lack of in-person visitation and the time it took to get medical treatment. He left the grievance form with a Sergeant Hornsby. Plaintiff Hicks reports that the sergeant said those complaints were not grievable matters and returned the form to him. Plaintiff Hicks maintains that it is very difficult to get access to a kiosk, and when you can gain access to call your attorney, that call is in the presence (and hearing) of an officer.

36.   Plaintiff Hicks maintains that he is frequently locked down in his cell for days at a time. Further, he is in a two-person cell with three people. During those frequently periods where he's locked down for multiple days, he has no access to a kiosk, no ability to shower or practice normal hygiene, or go to the recreation yard. Plaintiff Hicks also maintains that the kiosks frequently malfunction taking his, other detainees', and his visitor's money while not delivering a promised service. When the kiosks do work, frequently the images displayed are blurred and/or the screen goes blank before the call is scheduled to end.

### D.   ALONZO HOSKINS

37.   Plaintiff Hoskins filed a grievance regarding the lack of in-person visitation, inadequate mental health and medical services, and the cost of commissary. He filed his grievance months before the filing of his Complaint but has not heard anything.  Plaintiff Hoskins placed his grievance in the 'official grievance box' at the KCJ.

38.   Plaintiff Hoskins maintains that his family is charged $5.00 to put money on his books. Plaintiff Hoskins is charged $10.00 for a medical visit, with an additional $5.00 charge if he receives any medication during his medical visit. The Defendant charges Plaintiff Hoskins for commissary, he is charged to use the phone, and he is charged to take money out of his

commissary account to place on his phone account so that he can call his family or other loved ones.

39. Plaintiff Hoskins is a large individual. He asserts that the food portions are inadequate. He maintains that he needs more food than he is currently getting. Plaintiff Hoskins doesn't have enough money to purchase food from commissary at the inflated prices charged. Since his incarceration he has lost fifteen (15) pounds. He is being forced to choose either to spend his limited money on food, or to maintain limited contact with his family.

40. Plaintiff Hoskins mental health has deteriorated since his incarceration at the KCJ. Though prior to his incarceration he never took psychotropic drugs, he does now. The trauma from being 'cut off' and isolated from family along with the deplorable living conditions he is forced to endure at the KKCJ has caused him to lose weight, lose hair, have difficulty sleeping, and caused him to experience depression as well as other mental health issues so severe that he requires medication.

41. Plaintiff Hoskins maintains that the isolation he experiences from being locked down for extended periods of time, is having a severe negative impact on his mental health. When he first came into custody, Plaintiff Hoskins reports that he was housed at the KCDF. For the nearly two weeks he was there, he was never let out of his cell, not even for a shower.

42. Plaintiff Hoskins asserts that the cost of being incarcerated at any of the Knox County Jail facilities is staggering: $5.00 for 15 minutes of visitation on the kiosk (that frequently doesn't function as promised); $10.00 per medical visit; $5.00 for medication; $5.00 for the privilege of placing money on a detainee's account; $4.00 per phone call (that frequently cuts off early); and, $.075 to transfer money from a detainee's account to that person's phone account or commissary account.

## E.   DAVID JOHNSON

43.   Plaintiff Johnson has filed several grievances during his period of incarceration at the Knox County Jail Facilities. When his first grievance was rejected, he filed six (6) individual grievances. Two (2) of those six grievances were denied, and he has appealed both. As of the date of the filing of the Complaint, he had heard nothing regarding the other four (4) grievances or the two (2) grievances he appealed. Plaintiff Johnson filed grievances regarding the banning of in-person visitation, the lack of adequate outdoor exercise, the inflated cost of commissary, the lack of proper access to the law library, the lack of proper medical and mental health treatment, and the 23 hours per day lockdown.

44.   Due to overcrowding, Plaintiff Johnson is forced to sleep on the floor with a mat. He is the third person in a two-person cell. Plaintiff Johnson asserts that as a result of insufficient staffing at the facility he, and other inmates, are kept in their cells for days at a time with no access to adequate exercise or time outdoors. He maintains that per jail policy inmates are to get out of their cells at least one hour per day. However, that one "hour" is oftentimes much less that sixty minutes, and too often he does not get out at all. Plaintiff Johnson maintains that frequently one pod officer is assigned to supervise two pods. Plaintiff Johnson has learned to look carefully at the corrections officer when he enters his pod. When a pod officer is carrying two sets of keys, it means he's assigned to multiple pods and inmates in neither pod will be getting any time out of their cells.

45.   Free access to legal materials on a tablet is limited to fifteen minutes. Anything over fifteen requires money to pay for tablet access. Money that Plaintiff Johnson can't afford.

46. Plaintiff Johnson maintains that visitation on a kiosk (that frequently malfunctions) is not the same as face-to-face visitation. He maintains that a face-to-face visit with his mother would dramatically improve his mental health.

## F. CURTIS LANE

47. Plaintiff Lane filed a grievance - depositing it in the 'grievance box'- over a month prior to November 28, 2018. As of the date of filing his Original Complaint, he had not heard anything about the status of his grievance.

48. Plaintiff Lane cannot visit with family or friends. In the pod where Plaintiff Lane is housed, when inmates are let out of their cells, half the pod gets out at the same time; half getting out sometime in the morning, while the other half waits and gets out together sometime in the afternoon. In order to contact Plaintiff Lane, a person has to go online, pay $5.00 for 15 minutes of time, and then he can receive the call on the kiosk. Sometimes Plaintiff Lane cannot see the face of the caller as the kiosk is based on facial recognition and the person calling, as well as the inmate, must be very still or the kiosk blurs the facial image. Plaintiff Lanes maintains that there are frequent technical issues that interfere with the phone call on the kiosk. Further, the kiosk visitation often ends abruptly before the time has expired with no refund to the inmate or the visitor. Plaintiff Lane maintains that he cannot initiate a phone call rather it must come from the outside.

49. At the KCJ, where Plaintiff Lane is being detained, there are no tablets for law library access. Detainees must access law materials through the kiosk which logs them off after forty-five minutes.

50. Plaintiff Lane is never allowed to go outside. At the KCJ, where Plaintiff Lane is detained, inmates do not have a recreation yard or access to the outdoors or sunshine. The sun

has not shone on Plaintiff Lane, or any detainee at the KCJ, since the day they were taken into custody.

## G. JESSICA MASE

51. Plaintiff Mase filed a grievance regarding the lack of in-person visitation and the overcrowding which has led to her sleeping on the floor. She reports she left her grievance in the 'grievance box' in the 2C-Pod of KCDF prior to November 1, 2018, and she has had no response.

52. When Plaintiff Mase was in classification, she was in a one-person cell. There were three women in that cell, including her. Currently, she is the second person in a one-person cell. Plaintiff Mase has had to sleep on the floor, on a mat, for weeks at a time.

53. When Plaintiff Mase' 80-year-old grandfather came to the KCDF to see her, he had to use a kiosk. The picture came up for approximately two minutes and then malfunctioned. From that point on, they could only hear one another. When Plaintiff Mase reported the broken kiosk, the corrections officer refused to fix it telling Plaintiff Mase, "just deal with it." Plaintiff Mase maintains that when her 80-year-old grandfather comes to the KCDF to visit her, he should be able to see her face and hear her voice.

54. Plaintiff Mase avers that sometimes she is locked down all day, not getting out for a shower, for exercise, or to use the kiosk. This sometimes goes on for days at a time. The lack of human contact with loved ones is psychologically damaging to Plaintiff Mase.

## H. JESSICA MORGAN

55. Plaintiff Morgan filed a grievance regarding the lack of in-person visitation, inadequate medical treatment, lack of recreation, and inflated costs of commissary prior to

November 1, 2018, placing the grievance in the B-Pod 'grievance box' at the KCDF. As of the date of her filing of the Original Complaint, she had not received a response to her grievance.

56. At the time of filing the First Amended Pleading, Plaintiff Morgan was 20 weeks pregnant and sleeping on the floor. She is the second person in a one-person cell. Plaintiff Morgan suffers from anxiety and depression, and at times she locked down for over 48 hours at a time. Plaintiff Morgan is charged $10.00 to see a nurse, and an additional $5.00 for any prescribed medications.

57. Plaintiff Morgan was required to pay $45.00 to obtain a required book in order to start the KCDF in-patient drug treatment program. If Plaintiff Morgan did not come up with the money to purchase the required book, Defendant would prohibit her from participating in the KCDF in-patient drug treatment program.

58. Plaintiff Morgan asserts that it is difficult to obtain the tablets used for access to legal materials, as the line to obtain them is often long. With limited time out of the cell, and the tablets often not charged or non-functioning, gaining access to a functioning tablet is difficult, sometimes not possible. Inmates get fifteen minutes per day with the tablets unless they have a 'gold pass,' but 'gold passes' cost $5.00 per day. Indigent defendants, including Plaintiff Morgan, do not have the means to purchase a 'gold pass.'

59. Plaintiff Morgan asserts that when there are more than two inmates in the room where the kiosk is located, or if an inmate is too loud, corrections officers will place everyone on lock down.

## I.   MICHAEL RICE

60.   Plaintiff Rice filed a grievance form placing it in the Pod C3 'grievance box' at the KCDF on October 3, 2018. The grievance was never answered leaving him with no ability to appeal.

61.   Plaintiff Rice is suffering from emotional problems from not being able to have in-person visitation. The kiosk and phone visitation are not adequate because the kiosk is most often fuzzy, costs $5.99 for fifteen minutes of time, and frequently ends abruptly before the fifteen minutes has expired with no refund too the visitor or the inmate.

62.   Plaintiff Rice applied for medical care for a sore in his mouth, was charged $10.00 for the visit. He was told that his complaint was a 'dental issue' not a 'medical issue.' He was required to pay an additional $10.00 for a 'dental visit'. He asked for a refund of his $10.00 for the 'medical call' but his request was denied. The corrections officer told him to 'file a grievance.'

63.   Plaintiff Rice was in classification for 2 weeks, where he did not get out of his cell for four to five days. There is no in-person visitation, and the kiosk screen is often blurry/or freezes up. Plaintiff Rice asserts that the tablets often times do not work.

64.   Plaintiff Rice is of the Jewish faith, and he has asked the Knox County Jail Facilities' chaplain to get him a copy of the Torah and a Yamaka. His requests were denied. In addition, it took the facility two months to provide Plaintiff Rice with a kosher diet.

65.   In jail, Plaintiff Rice is experiencing high levels of anxiety and has asked to see a mental health professional. It took the facility over one month to get him that visit.

## J.   RICK SAYLES

66. Plaintiff Sayles filed a grievance form regarding the lack of medical attention on October 29, 2018, in the KCDF Pod 3C 'grievance box.' He never got an answer or the option to appeal if his grievance was denied.

67. Plaintiff Sayles fell in the shower because it was so slick, and he injured his knee. He is indigent, but he was charged $10.00 for a sick call and $5.00 for the ibuprofen he was instructed to take twice per day. His knee swelled, but the only treatment he has been given at the Knox County Jail Facility is an Ace bandage, despite his belief that he needs diagnostic testing and care by a medical specialist. The Ace bandage has not taken care of his injury or alleviated his pain. Plaintiff Sayles asked for an MRI and asked to see a specialist. Those requests were denied.

68. Plaintiff Sayles maintains that the amount of food he receives is inadequate. He has lost more than 20 pounds simply because there is not enough food provided by the jail, and he does not have sufficient funds to purchase commissary.

## K.   ROBERT THOMAS

69. Plaintiff Thomas filed a grievance form regarding the lack of in-person visitation, inadequate medical services, and the loss of money from the excessive charges at the Knox County Jail Facilities prior to November 1, 2018, in the KCDF Pod 3D 'grievance box' but to his knowledge no action was ever taken regarding that grievance. He has never heard from any KCDF personnel. Plaintiff Thomas also asserts that the lack of proper staffing at the Knox County Jail Facilities makes conditions dangerous for both inmates and staff.

70. Plaintiff Thomas asserts that it takes too long to get sick calls answered by medical. For example, if an inmate suffers a serious medical condition such as chest pain, the kiosk takes too long and the inmate does not receive immediate medical attention.

71. Plaintiff Thomas asserts that the kiosk visitation is insufficient. Sometimes the kiosk cuts the inmates off in the middle of their conversation, and they are still charged for the kiosk call. Neither the inmate nor the visitor receives a refund.

72. When Plaintiff Thomas was housed in Pod 3 of KCDF, he spent several days on lock down with no shower, no kiosk access and no exercise.

L.    **MATTHEW WALLS**

73. Plaintiff Walls filed a grievance form on October 13, 2018, in the Pod 3B KCDF 'grievance box.' The grievance form was sent to medical and ignored. The corrections officers told him the grievance form was not properly completed. Plaintiff Walls filed another grievance form and, as of November 28, 2018, he had heard nothing as to the status of his grievance. The grievance forms filed by Plaintiff Walls complained of the banning of in-person visitation, lack of outdoor time, and the excessive cost of everything to include medical care. Indigent inmates cannot send emails or make telephone calls.

74. Plaintiff Walls asserts that inmates only go outside about once per week because of a lack of adequate staffing at the Knox County Jail Facilities. Plaintiff Walls asserts that doing legal research is difficult to impossible to do or complete because inmates are only given a few minutes access.

75. Plaintiff Walls asserts that inmates have to pay for medical care and sometimes they still do not get medical care. If an inmate does not have money, they cannot see a doctor because

there is a $10.00 charge. Plaintiff Walls also asserts that it can take two to four weeks after inmates ask for medical care before they are seen by medical staff.

76. Plaintiff Walls asserts that sometimes inmates ask for grievance forms and the officers will not give them to inmates.

77. According to Plaintiff Walls, when he tries to do legal research, he gets timed out after 15 minutes. He says that 15 minutes of legal research is hardly enough time to get started, much less finished. He does not have the funds to purchase a full day's worth of tablet time in order to do legal research. (15 minutes is free; if an inmate wants more time with the tablet, they have to pay $5.00 for an additional 24 hours.)

78. Once, Plaintiff Walls says the power went off on a weekend, cutting of the use of the toilets. A few worked, and Plaintiff Walls says that 50 people used seven toilets for a day and a half. (This was in one of the dormitory-like pods at KCDF.)

## M.    ABOLITION OF FACE TO FACE VISITATION

79. Plaintiffs state the following:

80. On April 14, 2015, the KCSD abolished all in-person, face-to-face visitation in favor of a newly installed video visitation system. The video visitation system is free on-site at the Knox County Jail Facilities, or at a cost of $0.40 per minute from a visitor's own computer.[1]

81. Inmates can no longer be in the same space as their loved ones as a result of the complete abolition of in-person visitation.

82. The design and construction of both the KCDF and the KCJ contemplated face-to-face visitation. A majority of the Pods at the KCDF have "visitation areas" that allow an inmate - without requiring guard escort - direct access to a visiting area where they can sit down across

---

[1] https://www.himianrightsdefensecenter.org/action/news/2014/pln-quoted-about-video-visi

from their family member or other loved one who is on the opposite side of a plexiglass window separating the inmate from the visitor. At the KCJ there are multiple visiting areas with the same – general – design. The inmate picks up a phone or talks through glass with the visitor(s) on the other side.

83. A few years ago, inmate-facing kiosks were installed at the KCDF. These units were provided by Pay-Tel and Tech Friends, Inc. A remote visitor must pay $5.99 for each 15-minute remote visit. For every 15- minute remote session, the KCSD pockets $2.62 of that $5.99 as a "commission." From March 2014 to November 2017, Defendant Knox County, Tennessee collected $68,777.00 from "commissions," an average of $7,641.00 a month. "Remote visits, offered at a charge of $5.99 per half-hour, added up to more than $164,000 in total revenue over the past four years as of this spring. About $79,000.00 went back into county coffers and the rest into profits for provider Securus Technologies."[2]

84. One hour of remote visitation every week for one year, costs $1,246.00 to the visitor.

85. If the visitor has a computer, and if that computer has a webcam and a microphone, and if Internet access is available or the visitor can take their computer somewhere that does have free internet access, one can log in to JailATM.com and set up an account. If an individual has a credit card, then a name, address, driver's license number (or officially issued state identification or passport number), and Social Security number has to be provided. Once an account is approved - it is not instantaneous - a visit can be scheduled with an inmate. At the scheduled time, the remote visitor logs on. The inmate logs on. At that point, both parties see each other and can talk, much like Skype, except that remote video visits on Skype are free.

---

[2] https://www.knoxnews.com/story/news/crime/2018/11/25/jail-video-visitation-knox-county-face- face/2027042002/

86. If one cannot afford that $0.40 a minute, the visitor can go to a newly renovated section of the KCWRC on Maloneyville Road, next to the main KCDF in the northeast part of the county. A visit must be scheduled 24 hours in advance. Two 15-minute sessions can be scheduled back to back. However, if an individual is running late for the scheduled time, no extra time is granted.

87. Once an individual gets to the video call, one party can sit in a chair and stare at their loved one, whose image is now housed inside a black trapezoidal box attached to the wall. The kiosk is a little wider than a pay phone, with a video screen and a built-in camera and a phone receiver on the side.[3]

88. When the Knox County Commission voted to approve the system in September 2012, there was not any discussion. The item was on the consent agenda.

89. The company dispensed 45 computerized kiosks at no cost to Knox County, provided every 15 minute video session would cost $5.99. The County receives 43.75% of those fees.

90. The Knox County Jail Facilities' own data shows no drop in reported cases of contraband as a result of abolishing in-person visitation. Prior to the ban, visitors could not touch the inmates and had to speak through a plexi-glass screen.[4]

91. Banning in-person visitation has made the Knox County Jail Facilities less safe for both inmates and staff. Even after trimming the data to remove outliers, the rate of assaults on staff and other inmates tripled after the ban was enacted in April 2014. Id. at 3.

92. The average rate of disciplinary infractions has increased after in-person visits were abolished. Id. at 5.

---

[3]https://www.humanrightsdefensecenter.org/action/news/2014/pln-quoted-about-video-visitation-tenn
[4] **To what End?: Assessing the Impact of the Knox County Jail's Ban on In-Person Visits. Published by Face To Face Knox, Knoxville, TN January 29,2018.**

## N.    DENIAL OF ADEQUATE OPPORTUNITY FOR OUTDOOR EXERCISE

93.  Plaintiffs state the following on information and belief.

94.  The KCDF provides no access to outdoor exercise for the inmates housed in that facility. The inmates are subjected to a concrete room with little to no natural light.

95.  Due to overcrowding and lack of staff, inmates do not have the opportunity to get out of their cell for exercise. Inmates are not let out of their cells several days each week and such practice is a common occurrence.

96.  There are many days when the inmates do not even have access to the paltry exercise area provided at the KCDF because of lack of staff available to supervise the inmates.  When time outside is offered, which is grossly inadequate, it does not meet the minimum requirements a person would need to maintain good health.

97.  Additionally, the lack of adequate time outside of one's cell creates other issues such as: causing personal stress for inmates; lack of personal safety; lack of proper hygiene; and, increased risk of violence and inadequate sleeping arrangements to name a few. Combined with overcrowding and understaffing, these conditions are unsafe.

## O.    INFLATED COMMISSARY AND FEES

98.  Plaintiffs state the following on information and belief.

99.  In 2014, the KCSD realized $872,766.00 in revenue from commissary fees. This revenue figure included fees charged for Pay-Tel for phone calls and ATM fees; the sales of snacks; haircuts; toothbrushes; soap; - everything an inmate might purchase while at a facility - over cost, for 12 months. This amount was an increase of $33,333.00 over 2013.

100.  Jail ATM, Pay-Tel Communications, Securus Technologies, and Aramark profit from the fees and additional charges associated with their products.

101. Furthermore, if inmates have outstanding costs owed to the Knox County Jail Facilities, any money placed in those inmates' accounts, if less than the outstanding costs, will go directly to the Knox County Jail Facilities, rather than to the inmate. Furthermore, if inmates have fees outstanding with the Knox County Jail Facilities, the Knox County Jail Facilities collect money placed in inmates' accounts to cover those fees. This is in addition to fees charged for use of phones, tablets and email messaging.

## P.    LACK OF PROPER ACCESS TO A LAW LIBRARY

102. Plaintiffs state the following:

103. Inmates are allowed access to law library resources through the jail-provided tablets or through the kiosks. Tablets are not available to inmates at the KCJ. Inmate time on a kiosk is severely limited. At the KCDF, tablets are the de facto means by which inmates are provided access a law library.

104. Inmates are allowed to rent tablets for 24 hours at a time at a rate of $4.99 a day, or can use the tablets free of charge for 15 minutes at a time, every 2 hours, *as available*. In theory, inmates can use kiosks for 45 minutes at a time for law library access. The tablets are available - at least in one pod - at the guard desk. However, this information is not widely disseminated, and circulation of the tablet is completely subject to the on-duty guard's preference.

105. Indigent inmates have limited access to tablets (i.e., fifteen (15) minute increments every two hours). Frequently, tablets are not functioning. Inmates have limited access and time on the kiosks. Most inmates at the KCDF and the KCJ have limited time out of their cells. When out of their cells, all inmates are trying to use the kiosks for contact with the outside world, ordering commissary, and other essential functions. Tying up a kiosk for 45 minutes to do research places an inmate at odds with other inmates. The Facility charges $0.15/page for copies

(as per the Sheriff's 2018 Handbook). Making copies of needed legal materials (i.e., cases, articles, statutes) is cost prohibitive for the named Plaintiffs and other indigent inmates at these Facilities.

106. All named Plaintiffs in this action are indigent. In each individual Plaintiff's case, there was a judicial finding of indigency by a Magistrate, General Sessions Judge, or Criminal Court Judge.

107. *Tennessee Code Annotated* § 16-1-117 defines "case" and "proceeding" as follows

(1) Each criminal case shall be assigned a unique docket number. A criminal case shall be defined and reported as a single charge or set of charges arising out of a single incident concerning a single defendant in one (1) court proceeding. An incident shall be all criminal activity occurring on the same date. A court proceeding refers to a single level of court, such as general sessions or circuit. An appeal, probation revocation, or other post-judgment proceeding shall be considered a separate case.

108. Tennessee Supreme Court Rule 13 governs the appointment of counsel for people who are indigent. Section 1(e)(5) of that Rule reads as follows, "Appointed counsel shall continue to represent an indigent party throughout the proceedings, including any appeals, until the case has been concluded or counsel has been allowed to withdraw by a court." The Administrative Office of the Courts interprets Rule 13 and T.C.A. § 16-1-117, that a case bound over to the Grand Jury by a sessions court judge to be a 'concluded proceeding.' Indigent defendants, including named Plaintiffs Coulson, Hicks, Johnson, Lane, Rice, Sayles, and Walls were effectively without counsel during the period of time their cases were pending before the Knox County Grand Jury. Named Plaintiff Thomas was incarcerated and without counsel, for much of 2018 and 2019 as he served a sentence of split confinement. Each named Plaintiff suffered actual injury as a result of the denial of their constitutional right to access court by the Defendant's policy to deny indigent inmates' access to a law library through any effective means

other than a tablet, when it works, and when a correctional officer decides to allow an inmate to have access to a tablet.

109. The named Plaintiffs in this cause of action have suffered 'actual injury' with regard to their access to courts claim. All named Plaintiffs – having been found to be indigent - were appointed counsel; the Knox County Public Defender's Community Law Office. For periods of time, some greater than others, all were left without counsel, some for a day, some for multiple days, some for months, and, consequently, were without access to the courts. Because of the Defendant's law library policies that deny incarcerated Plaintiffs – and all other incarcerated inmates - meaningful access to legal resources, Plaintiffs were unable to file motions for bail or to seek reductions in the amount of their existing bail. For varying, though significant, periods of time, Plaintiffs were denied the ability to access the courts to ask for expert services in the form of an investigator who could identify, locate and interview material witnesses. Further, Plaintiffs were denied the ability to identify, locate and secure potentially exculpatory evidence and were denied the ability to ask the court for funding to hire a forensic expert to locate and examine that evidence. All named Plaintiffs, as well as Plaintiffs in the requested class, have been denied access to courts as a direct result of Defendant's policies limiting access to the law library and/or law related resources.

## Q. CRUEL AND UNUSUAL PUNISHMENT IN THE FORM OF INADEQUATE MENTAL HEALTH AND GENERAL MEDICAL TREATMENT

110. Plaintiffs state the following: Knox County Jail Facilities have failed to provide proper access and treatment to inmates in the Knox County Jail Facilities. During booking, inmates do not receive a mental health evaluation, and in many cases inmates fail to receive their medications in the proper dosage or at the proper time. Inmates are simply given a piece of paper

standards of accreditation required by the American Correctional Association. The downtown Knox County Jail ("KCJ") located at 400 Main Street, Knoxville, Tennessee 37902; the Roger D. Wilson Knox County Detention Facility ("KCDF") located at 5001 Maloneyville Road, Knoxville, Tennessee 37918; and the Knox County Work Release Center ("KCWRC") are hereinafter referred to collectively as the "Knox County Jail Facilities."

2. The above captioned plaintiffs are pre-trial detainees with the subclass of family and friends impacted by the Defendant's policies and practices and alleges as follows, individually and on behalf of all others similarly situated:

## JURISDICTION AND VENUE

3. This action arises under the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343, and additionally under 28 U.S.C. § 2201 and 2202 and 5 U.S.C. § 552.

4. Venue is proper in the United States District Court for the Eastern District of Tennessee under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events complained of occurred in this District, and because the Defendant is Knox County, Tennessee. Venue is also proper in the Knoxville Division of this Court, as a substantial part of the events complained of occurred in Knox County.

5. Plaintiff's claims for relief are predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to the Plaintiff by the First, Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution and the laws of the United States.

6. This action seeks declaratory and injunctive relief under 42 U.S.C. §§ 1981 and 1983. This court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343. It

informing them of the procedure in which they can follow to access a nurse. The appointment for the nurse may be anywhere between a day to a couple of weeks in the future, and the failure to address health concerns can cause safety issues with other inmates as well as for the staff.

111. Upon information and belief, there has been an increase in the number of inmates housed in the Knox County Jail Facilities who develop suicidal thoughts and the number of inmates who attempt suicide.

112. There are infirmary beds within the medical unit of the KCDF with six medical housing beds and two infirmary beds for females (KCDF Pod 6B-Female).

113. There are infirmary beds within the medical unit of the KCDF with 10 medical housing beds and two infirmary beds for males (KCDF Pod 6AB-Male).

114. The Knox County Jail Facilities' staff is not adequately trained to meet the needs of inmates with mental health conditions.

115. Although Defendant has pledged to train each Knox County Jail Facilities' staff member to deal with inmates with mental health issues, only a small percentage of the staff have actually received training.

116. The KCDF has not created an effective schedule to ensure all staff will receive training to meet the needs of inmates with mental health issues.

117. The inmates are dependent on the staff to take care of their needs, and the failure to do so is a violation of the inmates' Eighth Amendment rights. Plaintiffs aver that the Defendant acted, and continues to act, with deliberate indifference to Plaintiffs' health and/or safety.

**R. INHUMANE ISOLATION VIA 23/1 LOCKDOWN**

118. Plaintiffs state the following: The KCDF is overcrowded.

119. The KCDF's maximum capacity is 1,036 inmates. As of June 30, 2018, the KCDF was housing 1,163 inmates (in 2017 the number was 1,054). However, the KCDF is only equipped to accommodate 1,036 inmates, and there is a significant overcrowding issue, leaving 127 inmates without a proper bed. As of October 16, 2019 there are 1153 inmates at the KCDF and 209 inmates at the KCJ.

120. Many cells house three inmates in a cell designed for two individuals.

121. Due to staffing issues, the inmates are often not allowed out of their cells for periods of over 24 hours, and generally all weekend.

122. Typically, the 23/1 lockdown is reserved for inmates on maximum security who are receiving punishment for a violation of a rule or poor behavior. However, upon information and belief, inmates are not granted a minimum of one hour outside of their cells for days at a time.

123. The inmates at KCDF have been subjected to 23/1 lockdown over a consistent period of time and not as a form of punishment given to a few inmates. This 23/1 lockdown is pervasive throughout the entire facility, and it is believed that Plaintiffs are on 23/1 lockdown multiple times a week due to lack of staffing. Inmates do not have time to get sufficient exercise, take a shower, or use the kiosk.

124. Inmates who are not classified as maximum security are not receiving their minimum one hour outside of their cell for days at a time.

125. The lack of staffing does not excuse treatment or conditions that violate the Plaintiffs' constitutional rights.

126. The long-term deprivation of meaningful social interaction has had a negative impact on the Plaintiffs.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

127. The Knox County Sheriff's Office Inmate Handbook (2018 edition) is provided to all inmates at all three Facilities at the time the inmate is booked into the Facility. The Inmate Handbook "… assists you (inmate) … gain a better understanding of correctional procedures." Knox County Sheriff's Office Inmate Handbook (p. 3; 2018 edition). Additionally, Section V, Sub-Section B: Sub(a): Submitting a Grievance, states as follows:

> Each Pod will be equipped with a "Grievance Box" in which completed grievance forms *must* be placed. This is a secured box that is only accessed by the grievance chairperson or his/her designee. (At KCJ, a "Grievance Box" will be passed through each pod, during 2nd shift medication pass).

The named Plaintiffs have exhausted their administrative remedies. Attached to the original Complaint (Doc. 1) as Exhibit 1 and Exhibit 2 are Plaintiffs' Affidavits and Unsworn Declarations 28 U.S.C. § 1746. Plaintiffs incorporate by specific reference these Exhibits to the original Complaint to this First Amended Complaint. Attached to this Second Amended Complaint as Exhibit 1 is the Knox County Sheriff's Office Inmate Handbook (2018 edition)

## CLASS ALLEGATIONS

128. The treatment to which Plaintiffs, and the class they represent, have and will be subjected - unconstitutional conditions at the Knox County Jail Facilities - were all performed pursuant to policies, customs and/or practices of Defendant.

129. Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an Order declaring that Defendant's treatment of Plaintiffs pursuant to these policies, customs and/or practices is unlawful. Plaintiffs bring this action on their own behalf and on behalf of all persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(b)(3). Plaintiffs seek certification of a class defined as follows: All persons who have been and are incarcerated at the Knox County Jail Facilities past, present and future. Additionally, class

certification is sought for all persons who are family members, friends, employers and/or other persons who have been negatively impacted by said unconstitutional practices.

130. Pursuant to Federal Rule of Civil Procedure 23(a), the members of the class are so numerous that joinder of all members is impractical. Plaintiffs do not know the exact number of class members. Plaintiffs are informed and believe, and thereupon allege, that there are more than 100 persons in the class defined above.

131. Pursuant to Federal Rule of Civil Procedure 23(a), Plaintiffs are informed and believe, and thereupon allege, that there are questions of law and fact common to the class, including but not limited to:

- Whether the abolition of in-person visitation violates the substantive due process mandate of the Fourteenth Amendment to the United States Constitution, and the First or Eighth Amendments as applicable to the States through the Fourteenth Amendment;

- Whether the Plaintiffs are subject to cruel and unusual punishment by denial of adequate opportunity for outdoor exercise is a violation of the Eighth Amendment to the United States Constitution;

- Whether Defendant is liable to Plaintiffs for violating the First, Fourth, Eighth and Fourteenth Amendment rights of the Plaintiff class; and

- Whether Defendant should be enjoined from continuing these inhumane and unconstitutional practices.

132. Pursuant to Federal Rule of Civil Procedure 23(a), Plaintiffs' claims are typical of the class they seek to represent. Plaintiffs and the class they seek to represent were all subjected to unconstitutional practices at the Knox County Jail Facilities. Plaintiffs have the same interests and have suffered the same type of injuries as the proposed class. Each proposed class member suffered actual damages as a result of the challenged conduct. Plaintiffs' claims arose because of Defendant's policies, customs and/or practices. Plaintiffs' claims are based upon the same legal theories as the claims of the proposed class members.

133. Plaintiffs' counsel have the resources, experience and expertise to successfully prosecute this action against Defendant. Counsel know of no conflicts among any members of the class, or between counsel and any members of the class.

134. Pursuant to Federal Rule of Civil Procedure Rule 23(b)(3), upon certification, class members must be furnished with the best notice practicable under the circumstances.

## CLAIMS FOR RELIEF COUNT ONE

I.      **Ending of in-person visitation to pay to view policy violates Plaintiffs' rights under the First, Eighth and Fourteenth Amendments to the United States Constitution. Overton v. Bazzetta, 539 U.S. 126 (2003)**

135. The first count is asserted by Plaintiffs and the proposed class against Defendant.

136. Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

137. The in-person visitation ban violates the substantive due process mandate of the Fourteenth Amendment of the United States Constitution, and the First and Eighth Amendments as applicable to the States through the Fourteenth Amendment.

138. Plaintiffs have a constitutional right to contact and in-person visitation.

139. Defendant's arbitrary ban on all in-person visitation from family members, employers and friends violates the constitutional prohibition against cruel and unusual punishment. The ban makes it difficult for families to maintain relationships with inmates. Numerous studies have found that inmates' family relationships and ties to family members during incarceration improve post-release outcomes. Christy A. Visher & Jeremy Travis, Transitions from Prison to Community, 29 ANN. REV. SOC. 89,100 (2003) (collecting sources). "[Substantial empirical evidence" indicates "that frequent, high-quality visitation can reduce prison violence, maintain family bonds, break the intergenerational cycle of

incarceration, and smooth the reentry process, thereby reducing recidivism rates." Chesa Boudin, Trevor Stutz & Aaron Littman, Prison Visitation Policies: A Fifty-State Survey, 32 YALE L. & POL'Y REV. 149,151-52 (2013) (footnotes omitted) (collecting sources).

140. The ban on in-person visitation is a dramatic departure from accepted standards for conditions of confinement. See Sandin v. Conner, 515 U.S. 472,485,115 S.Ct. 2293,132 L.Ed.2d 418 (1995).

141. The ban on in-person visitation infringes on inmates' First Amendment right of intimate association and is not reasonably related to a valid penological objective.

## COUNT TWO

**II. Cruel and unusual punishment by denial of adequate opportunity for outdoor exercise.**

142. The second count is asserted by Plaintiffs and the proposed class against Defendant.

143. Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

144. The Eighth Amendment to the United States Constitution does not mandate comfortable prisons, but it does forbid inhumane conditions. Farmer v. Brennan, 511 U.S. 825, 832 (1994). If (1) treatment of an inmate is, objectively, a "sufficiently serious" deprivation of rights, and (2) prison officials have, subjectively, a "sufficiently culpable state of mind," the Eighth Amendment has been violated. Id. at 834. The inhumane, cruel, and baseless policies of placing inmates in tiny confined cells for long periods of time with little human contact, activity or exercise violates the inmates' rights under the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

145. Denial of adequate opportunity to be outside and to have adequate outdoor exercise during the time Plaintiffs are incarcerated at the Knox County Jail Facilities

constitutes cruel and unusual punishment contrary to the Eighth Amendment to the United States Constitution.

146. The denial of adequate opportunity for outdoor exercise serves no legitimate penological interest. Maximum security inmates are entitled to one hour of outdoor exercise each day. However, all inmates are being denied the opportunity to receive a sufficient amount of time outside of their cells. Prisoners are kept in small, cold cells with either two or three cell mates inside. The exercise area is a concrete floor with doors on either side connecting two pods. There is a tiny window, but no real access to the outside world. There is no fresh air coming in, and there is not enough space for all inmates due to overcrowding.

## COUNT THREE

**III.** **Inflated cost of commissary and fees in violation of the Fifth Amendment to the United States Constitution.**

147. The third count is asserted by Plaintiffs and the proposed class against Defendant.

148. Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

149. The inflated cost of commissary and fees associated with jail-issued ATM use and cards, and the inflated cost of phone calls violates Plaintiffs' Fifth Amendment protection against deprivation of property without due process.

150. Plaintiffs' unconstitutional deprivation of their property results from a governmental policy. Defendant is responsible for actions of JailATM, Aramark and Securus. Defendant thereby deprived Plaintiffs of rights, privileges and immunities protected by the United States Constitution or the laws of the United States.

151. The Knox County Jail Facilities sanctioned overcharging by JailATM, Aramark and Securus Technologies. When the technology malfunctions, inmates are still charged for the full service, despite not receiving the full benefit of the service. In addition, the KCDF's

access of inmate funds to cover outstanding fees demonstrates Defendant's intentional interference with the possession of the personal property of Plaintiffs.

152. Plaintiffs possess a constitutionally protected interest in the monies Defendant took from them. Hampton v. Hobbs, 106 F.3d 1281,1287 (6th Cir. 1997). Defendant's card fees and the interest earned constitute a taking of property in violation of the Fifth Amendment to the United States Constitution. The Tennessee Court of Appeals has found that 'the due process clause protects a prisoner's property interest in his or her trust fund account, and the Department cannot take that money without due process of law unless the statutes or the Department's policies provide otherwise." Jeffries v. Term. Dep't of Corr., 108 S.W.3d 852, 872 (Tenn. Ct. App. 2002). While inmates are not generally afforded constitutional protections related to inflated commissary prices alone, see Newell v. Sheriff, No. 1:1 1-cv-86,2014 WL 4411045, at *9 (E.D. Tenn., Sept. 8,2014) (quoting Bennett v. Sheahan, 1999 WL 967534, at *4 (N.D. 111., Oct. 5,1999)), they continue to have a property interest in the money in their accounts, the deprivation of which violates the Fifth and Fourteenth Amendments to the United States Constitution. See Hobbs, 106 F.3d at 1287. The overcharging of inmates in the commissary and for communication services deprives inmates of their property and constitutional rights.

### COUNT FOUR

IV. **Lack of proper access to law library and reading material.**

153. The fourth count is asserted by Plaintiffs and the proposed class against Defendant.

154. Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

155. Plaintiffs have "the fundamental constitutional right of access to the courts" which "requires prison authorities to assist inmates in the preparation and filing of

meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977).

156. Defendant has limited Plaintiffs' access to legal materials, violating Plaintiffs' constitutional right to have meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 830 (1977). Inmates are limited by the number of tablets available and the 15 minute free access to the tablets bearing legal materials. They get 15 free minutes a day, when they can get a tablet, and when the power supply is charged. As such, Plaintiffs have not been able to prepare relevant legal forms and have not been able to comply with court orders and due dates.

157. By limiting time and access to necessary and relevant legal materials, Plaintiffs have suffered systematic and widespread actual injury, thus violating the Bounds standard. See Lewis v. Casey, 518 U.S. 343, 349 (1996). Even if the tablets contain full access to a sufficient legal library, the Bounds test requires not that correctional facilities have a library, but rather that inmates have meaningful access to legal materials in order to have access to the courts. "In the absence of some sort of direct legal assistance, which need not be by trained lawyers, the inmates must be given access to a library as required in Bounds. That access is not met by a system allowing a prisoner to check out books through a weekly bookmobile." Morrow v. Harwell, 768 F.2d 619, 623 (5th Cir. 1985) (referenced in Canterino v. Wilson, No. 86-6067,1989 WL 4013, at *4 (6th Cir. Apr. 10,1989) (aff g 875 F.2d 862)). Even if the tablets provide the same resources as would be available in a law library itself, "the existence of a law library, however adequate, does not per se eliminate the necessity for further measures to protect the right of access to the courts." Canterino, 1989 WL 40131, at *3. Fifteen-minute access to tablets with law library information that can only increase to 24-hour

access with a $4.99 rental-type fee allows for neither access to legal materials nor access to the courts.

158. Requiring inmates to pay for this access violates the rights ensured by Bounds, and creates an undue burden on indigent defendants, as tablets are only available in 15-minute increments every two hours to inmates unable to pay the 24 hour fee. Sometimes they do not even get those 15 minutes because there are no working tablets available. This denial of adequate access to legal materials deprives inmates of their constitutional rights.

159. Furthermore, Plaintiffs will meet their burden by "demonstrat[ing] that the alleged short-comings in the library or legal assistance program hindered [their] efforts to pursue [] legal claim[s]." Lewis v. Casey, 518 U.S. 343,351 (1996).

160. Plaintiffs have suffered actual injury as a result of the price-inhibitive, content-limited and time-limited access to legal materials imposed by the use of the tablets. As a result, their access to the courts has been hindered unconstitutionally.

161. Moreover, "the arbitrary denial of access to published materials violates an inmate's First [A]mendment rights," Martin v. Tyson, 845 F.2d 1451, 1454 (7th Cir.) (per curiam) (citing cases), cert, denied, 488 U.S. 863,109 S.Ct. 162, 102 L.Ed.2d 133 (1988), as well as a pretrial detainee's right not to be punished under the Due Process Clause. Kincaid v. Rusk, 670 F.2d 737, 743^14 (7th Cir. 1982). See also Bell v. Wolfish 441 U.S. 520, 545-52,99 S.Ct. 1861,1877-81, 60 L.Ed.2d 447 (1979).

162. Defendant's limitation of Plaintiffs' access to legal materials also violates the Tennessee Corrections Institute Minimum Standards for Local Adult Correctional Facilities, which states, "Inmates shall have unrestricted and confidential access to the courts. Inmates shall have the right to present any issue before a court of law or

governmental agency " Tenn. *Advisory Commission on Intergovernmental Relations,*
*Housing Tennessee's Convicted Felons: Improving Outcomes while Balancing State and*
*County Needs 107 (Aug. 2017).*

163. Furthermore, while inmates represented by counsel generally have sufficient
access to the courts for their criminal cases based on that representation, see Holt v. Pitts, 702
F.2d 639,640 (6th Cir. 1989) (pre-Lewis case holding that access to the courts was sufficient
when inmate had court appointed counsel), inmates must also be able to "challenge the
conditions of their confinement." Lewis, 518 U.S. at 355. Inmates who are represented by
counsel must adequately allege that court appointed counsel is not sufficient in pursuing
claims based on confinement conditions. See e.g., Martucci v. Johnson, 944 F.2d 291,295 (6th
Cir. 1991) (holding that "nothing in the record [lent] support to the presumption that Martucci
was barred from discussing his segregated confinement - and the legal implications thereof -
with his appointed attorney"). Plaintiffs assert that even when represented by counsel,
adequate access to the courts regarding their constitutional claims requires adequate access to
legal materials.

## COUNT FIVE

V. **Cruel and unusual punishment in the form of inadequate medical and mental health treatment.**

164. The fifth count is asserted by Plaintiffs and the proposed class against Defendant.

165. Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

166. Plaintiffs contend that the Knox County Jail Facilities have engaged in serious
systemic deficiencies in conditions of confinement in isolation cells, and in provision of
adequate medical, dental and mental health care services, in violation of the Eighth
Amendment to the United States Constitution. This denial of medical care results in pain and

suffering which serves no penological purpose. The denial of a prisoner's serious medical needs may amount to cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97 (1976). In Estelle, the Supreme Court noted that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical torture or a lingering death[.]... In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose." Id. at 103. The inadequate medical and mental health treatment within the Knox County Jail Facilities amounts to cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution.

167. Additionally, the Defendant has shown deliberate indifference to the safety of the inmates by failing to provide adequate mental health services or sufficient training to the officers in the Knox County Jail Facilities responsible for the care of the inmates. The failure to address health concerns (both mental and physical) can cause safety issues with other inmates as well as for the staff. This egregious oversight in mental health services systematically puts inmates at risk of pain, injury and death.[5] By failing to address the fundamental needs of inmates with mental health issues, the Knox County Jail Facilities are not meeting their constitutional mandate to protect against cruel and unusual punishment.

168. Defendant's unconstitutional policies, practices and customs, as listed above, are ongoing, continue to violate Plaintiffs' rights and were (and are) the moving force behind the injuries Plaintiffs suffered as a direct result of the constitutional violations. As such, Plaintiffs have no adequate remedy at law.

---

[5] For example, in a recent case in Colorado, a mentally ill inmate gouged out his own eyes after he was denied treatment for psychosis, https://www.theguardian.com/us-news/2017/dec/08/prisoner-gouges-out-eyes-colorado- boulder-mental-health-lawsuit

## COUNT SIX

VI.  **Inmates are subjected to inhumane isolation via 23/1 lockdown with no punitive or short-term purpose.**

169. The sixth count is asserted by Plaintiffs and the proposed class against Defendant.

170. Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

171. Defendant has subjected Plaintiffs to inhumane isolation via 23/1 (23 hours confined in a cell and one hour out of the cell) lockdown that serves no punitive or short-term purpose. Ordinarily, inmates may be placed on 23/1 lockdown to serve as punishment, which is typically limited to a brief period in which inmates lose privileges. Courts have held that short-term exposure to 23/1 lockdown serves a proper purpose and is not a violation of any constitutional rights. However, the inmates at the Knox County Jail Facilities have been subjected to 23/1 lockdown over a consistent period of time, and not as a form of punishment given to a few inmates. This 23/1 lockdown is pervasive throughout the Knox County Jail Facilities, and it is believed that Plaintiffs are on 23/1 lockdown multiple times a week due to lack of staffing. Inmates do not have time to get sufficient exercise. Many studies suggest that 23/1 lockdown has a negative effect on inmates' mental health. In addition, studies have shown that those who do not have a mental illness prior to entering jail often develop one while in jail, and those who are already diagnosed with a mental illness deteriorate. Subjecting inmates to consistent 23/1 lockdown violates the rights of the inmates because it is not a temporary revocation of privileges and serves no penological interest. Inmates are consistently denied even that one hour out of their cells due to staffing and other deficits. They are placed on lockdown with regularity, resulting in being trapped in an overcrowded cell for over 48 hours. The Knox County Jail Facilities have constructively created a state of

permanent 23/1 lockdown and have violated Plaintiffs' rights to be free from cruel and unusual punishment.

172. Defendant's use of 23/1 lockdown is especially egregious as most of the inmates at the Knox County Jail Facilities are pretrial detainees. "For a convicted prisoner, loss of liberty and separation from society should be the sole punishments imposed by imprisonment. For a prisoner not serving a sentence for a crime, the purpose of imprisonment should be to assure appearance of the prisoner at trial and to safeguard the public, not to punish." [6]

173. According to the ABA Standards for Criminal Justice: Treatment of Prisoners, "Correctional authorities should provide each prisoner, at a minimum, with a bed and mattress off the floor, a writing area and seating, an individual secure storage compartment sufficient in size to hold personal belongings and legal papers, a source of natural light, and light sufficient to permit reading." Cite 23-3.3 Housing areas. As KCDF is overcrowded, the inmates are not being provided with the minimum of a bed and mattress off of the floor because three inmates are being forced to share a cell designed for two individuals.

174. The ABA Standards also state that "a lack of resources should not excuse treatment or conditions that violate prisoners' constitutional or statutory rights" and that correctional facilities should be "appropriately staffed".

175. In Bishawi v. Northeast Ohio Corr. Ctr., the Sixth Circuit held that "a temporary loss of privileges and confinement-without any allegations that basic human needs were not met-cannot establish an Eighth Amendment claim." Bishawi v. Northeast Ohio Corr. Ctr., 628 Fed. Appx. 339,345-46 (6th Cir. 2014). Restrictions placed on inmates should be necessary

---

6

https://wvm.americanbar.org/groups/criminalJustice/publications/criminalJustice_section_archive/crimjust_stan da rds_treatmentprisoners/

and proportionate to the legitimate objectives for which those restrictions are imposed. Here, the confinement is not temporary and is a continuous occurrence within KCDF. The confinement of inmates violates their Eighth Amendment rights because it deprives them of a basic human need.

176. In Turner v. Safley, the United States Supreme Court made clear that "[p]rison walls do not form a barrier separating inmates from the protections of the Constitution." Turner v. Safley, 482 U.S. 78 (1987).

177. Individuals retain certain fundamental rights, even when incarcerated. The United States Constitution protects these rights for good reason. Incarceration can have a drastic effect on a person. Oftentimes, a prisoner's connections to their family or religious community may be their only source of hope. Stripped of these connections, a person will not only endure more difficulties during incarceration, but may also lack the community ties necessary to assist them upon release. Social interaction and meaningful activity are crucial to human well-being. By definition, solitary confinement isolates individuals and denies them mental, emotional, and environmental stimulation. Reid v. Wetzel. 1:18-cv-00176-JEJ (M.D. Pa.). A 2016 report by the United States Department of Justice recommends the use of solitary confinement only when it serves a specific penal purpose and when accompanied by regular review by a multi-disciplinary committee.[7]

178. The long-term deprivation of meaningful social interaction has had a negative impact on the Plaintiffs.

---

[7] U.S. Dep't Justice, Rep. & Recommendations Concerning the Use of Restrictive Housing at 99 (Jan. 2016), available at goo.gl/kyOxEg (last viewed Dec. 18,2017).

179. The Defendant does not have a specific penal purpose or legitimate objective for engaging in long-term lockdown of 23-24 hours and has violated the Eighth Amendment right of Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request relief as follows:

1. A declaration that Defendant's policies, practices and customs violate the United States Constitution.

2. A finding that as a direct and proximate result of Defendant's actions and inactions, Plaintiffs have suffered injuries entitling them to declaratory and injunctive relief against the Defendant.

3. An injunction directing Defendant to end the ban on in-person visitation for Plaintiffs.

4. An injunction directing the Defendant to provide Plaintiffs with an adequate opportunity for exercise.

5. An injunction directing the Defendant to stop the confiscatory practices of charging too much money for commissary, charging for use of a kiosk to communicate with friends and family, as well as law library services, and charging Plaintiffs to transfer money from one account to another. All of these practices deprive the Plaintiffs of property without due process.

6. An injunction directing the Defendant to provide the Plaintiffs with proper access to a law library in conformity with the fundamental rights of Plaintiffs under the Fourth and Fourteenth Amendments to the United States Constitution.

7. An injunction directing Defendant to provide adequate and constitutional access to healthcare services (both physical and mental) to all Plaintiffs.

8. An injunction directing Defendant to provide proper mental health training for the staff at the Knox County Jail Facilities.

9. An injunction banning the practice of allowing Plaintiffs out of their cell for only one hour a day and, in some cases, not allowing the Plaintiffs out of their cells for days at a time. The pods at both the KCJ and the KCDF, by their size and configuration, are designed to allow inmates to be out of their cells for much of the day to use the phone/kiosk, shower, watch television, eat their meals, play cards, etc. This practice of locking down Plaintiffs in their tiny cells (many of which have one or two extra people in them) for all but a fraction of an hour a day, or all day, violates basic human rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

10. An award of nominal, punitive, compensatory and presumed damages for each violation of Plaintiffs' First Amendment rights to be proven at trial.

11. An award of nominal, punitive and compensatory damages for each violation of Plaintiffs' Fourteenth Amendment right to due process in an amount to be proven at trial.

12. An award of nominal, punitive and compensatory damages for each violation of Plaintiffs' Eighth Amendment rights to be proven at trial.

13. An award of nominal, punitive and compensatory damages for each violation of Plaintiffs' Fifth Amendment rights to be proven at trial.

14. Costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988, and under other applicable law.

15. Pre-judgment and post-judgment interest.

16. The right to conform the pleadings to the proof and evidence presented by trial by jury.

17. Such other relief as the Court deems just and equitable.

## JURY DEMAND

18. Plaintiffs, by and through their attorneys, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

19. The Court to appoint interim external monitors to enforce Knox County's progress with regard to their compliance with the orders of this Court regarding the day-to-day operations of these Facilities.

20. The Court enter an order requiring Knox County to develop and implement an internal monitoring system to assure progress and compliance in meeting any court ordered benchmarks.

Respectfully submitted this the 31st day of October , 2019.


s/John E. Eldridge
John E. Eldridge, BPR 006667
Attorney for Plaintiffs
Eldridge & Blakney, P.C.
P.O. Box 398
Knoxville, TN 37901-0398
865-544-2010


s/Francis L. Lloyd, Jr.
Francis L. Lloyd, Jr., BPR 009808
Attorney for Plaintiffs
9111 Cross Park Drive, Suite D200
Knoxville, TN 37923
865-470-4070

## Certificate of Service

I hereby certify that this pleading has been delivered via the Court's electronic filing system to all interested parties, this the 30 day of _October_, 2019.


s/John E. Eldridge